# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=============================

## ON MOTION FOR REHEARING

=============================

### NO. 03-08-00582-CV

**Bastrop County, Texas, Appellant**

**v.**

**Denver Samples; One Martin's Meadow, Ltd.; Main Street, Ltd.; James E. Garon; and James E. Garon & Associates, Inc., Appellees**

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT NO. 26,567, HONORABLE CHARLOTTE HINDS, JUDGE PRESIDING**

### NO. 03-08-00648-CV

**In re Bastrop County, Texas**

**ORIGINAL PROCEEDING FROM BASTROP COUNTY**

## O P I N I O N

Bastrop County, Texas, appellant and relator in these proceedings, has filed a motion for rehearing. We withdraw our opinion and judgment of March 20, 2009, and substitute this opinion. We overrule Bastrop County's motion for rehearing.

Bastrop County filed an interlocutory appeal, *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008), and petition for writ of mandamus, *see* Tex. R. App. P. 52.3, complaining of the trial court's refusal to rule on the County's plea to the jurisdiction and abatement

of the underlying proceeding to allow appellee and real party in interest Denver Samples to exhaust administrative remedies.[1] We reverse the trial court's abatement order and affirm the court's implicit denial of the plea to the jurisdiction. We dismiss the County's petition for writ of mandamus.

The underlying lawsuit was brought by Samples against the County, One Martin's Meadow, Ltd., Main Street, Ltd., James Garon, and James E. Garon & Associates, Inc. In that suit, Samples alleged that in 1960 he bought nineteen acres along State Highway 21. Sometime after 1960, James and Rozelle Martin bought about 145 acres east of Samples's property. Samples gave the Martins verbal permission to use a 62-foot stretch of Samples's property to gain access from the Martin property to SH21. The throughway was not paved, but over time, it became "impressed with tire ruts while the native shrubs and grasses continued to grow between the ruts." In 2002, after James Martin died, Rozelle Martin sold the property to One Martin's Meadow, which subdivided the property for a housing development. The deed to One Martin's Meadow did not purport to include any interest in the throughway across Samples's property. However, One Martin's Meadow, relying on a survey performed by James Garon and Garon's surveying firm and on a county roadmap prepared by the County, paved the throughway across Samples's property to SH21. Samples was never contacted for permission to use his property for highway access.

Samples sued One Martin's Meadow and Main Street, Ltd., which constructed homes in the subdivision, for trespass to try title. Main Street filed a cross-claim against One Martin's Meadow, asserting that One Martin's Meadow had represented to Main Street that the subdivision

---

[1] The County and Samples agree that we have jurisdiction over the interlocutory appeal because the trial court's order can be interpreted as implicitly or expressly denying the County's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008).

had access rights across Samples's property to the highway. Samples later dismissed his claims against Main Street. One Martin's Meadow filed a third-party petition against Garon and his firm, alleging that they were negligent in their survey of the property and had certified that the property had access to and from SH21 across the throughway, which One Martin's Meadow believed was named Martin's Crossing Drive. In March 2008, Samples amended his petition to add the County as a defendant, alleging that in June 2007, the County, through its commissioners court, created a roadmap that improperly designated Martin's Crossing Drive as a road in which the County had a public interest. Samples sought to contest the County's designation of the throughway as a county road and asked the trial court to set aside the County's designation in the County's roadmap and to require the County to redraw the map. The County filed a plea to the jurisdiction, asserting that under chapter 258 of the transportation code, Samples was required to contest the roadmap at the commissioners-court level before he could sue in the trial court to have the map redrawn. *See* Tex. Transp. Code Ann. §§ 258.001-.007 (West Supp. 2008). Following a hearing on the County's plea, the trial court signed an order abating the proceeding to allow Samples "the opportunity to pursue the administrative remedies available under Chapter 258."

In its interlocutory appeal, the County argues that the trial court should have granted the plea and dismissed the suit rather than abating it because Samples did not exhaust his administrative remedies before suing the County. In its mandamus petition, the County argues that the trial court abused its discretion in refusing to rule on the County's plea to the jurisdiction.

A county's commissioners court may propose a roadmap showing all roads in which the county "claims the existence of a public interest." *Id*. § 258.002(a). A commissioners court

3

proposing a county roadmap must hold a public meeting, during which a person asserting a private interest in a road may protest the road's inclusion on the map. *Id*. § 258.002(b). A person asserting a private interest may also file a written protest at any time before the public hearing. *Id.* If a protest is made or filed, the commissioners court shall appoint a jury to determine whether the public has an interest in the contested road. *Id.* The commissioners court is required to publish notice of the hearing in at least one newspaper of general circulation in the county. *Id*. § 258.002(c). A person claiming a private interest in a road in which the county asserts a public interest "may contest the inclusion of the road in the county road map by filing a suit in a district court in the county in which the road is located not later than the second anniversary of the date on which the county road map including the road was adopted." *Id.* § 258.004(a). "The county has the burden of proving that the county has continuously maintained . . . the road in question." *Id.* § 258.004(b).

The County argues that because Samples did not appear at the hearing on the map or file a written protest before the hearing, he has not exhausted the available administrative remedies and therefore may not sue under section 258.004. The County contends that section 258.002(b), which states that a person asserting a private interest in a road claimed to be public "may" file a written protest or appear at the roadmap hearing, should be read as *requiring* the landowner to protest at or before the hearing before he may sue under section 258.004. As support, the County points to other statutes in which "may" has been interpreted as setting out a mandatory precondition to suit. However, those statutory frameworks are very different than the one at issue here.

In *Schroeder v. Texas Iron Works, Inc.*, the supreme court concluded that by stating that an aggrieved person "may file" a complaint with the Texas Commission on Human Rights, the

4

Commission on Human Rights Act meant that the person must have exhausted his administrative remedies before filing suit. 813 S.W.2d 483, 487-88 (Tex. 1991). It reached this conclusion after considering that the Act was intended to advance policies set out in federal anti-discrimination statutes, which require "exhaustion of administrative remedies prior to litigation"; established "a comprehensive administrative review system"; and used the date a complaint was filed with the commission to determine the deadline for filing suit in a trial court. *See id.* at 485-87. In *Gregg County v. Farrar*, we noted that the Texas Whistleblower Act required an aggrieved person to "exhaust any applicable grievance or appeal procedures" before filing suit, regardless of language in an employee manual that a grievance committee decision "may be appealed." 933 S.W.2d 769, 774-76 (Tex. App.—Austin 1996, writ denied).[2] Similarly, the education code and the local government code's provisions related to zoning decisions, which use "may" in discussing certain administrative procedures or the filing of an appeal, both require a complainant to first exhaust available administrative remedies before filing suit. *See* Tex. Educ. Code Ann. § 7.057, 21.209, .301, .307 (West 2006) (provisions related to appeals available at various levels generally say that aggrieved person "may appeal" to next level in process); Tex. Loc. Gov't Code Ann. §§ 211.010(a), .011(a) (West 2008) (person aggrieved by zoning decision may appeal to board of adjustment, and, after decision by board, "may" seek judicial review); *Jones v. Clarksville Indep. Sch. Dist.*, 46 S.W.3d 467, 470-71 (Tex. App.—Texarkana 2001, no pet.) (interpreting "may" in section 7.057

---

[2] The current version of the whistleblower act provides that an employee "must initiate action under the grievance or appeal procedures of the employing state or local governmental entity . . . before suing under this chapter." Tex. Gov't Code Ann. § 554.006 (West 2004).

of education code to mean that "aggrieved person may appeal, and *if* an appeal is taken, it *must* be to the commissioner if the matter is one within the scope of the agency's review powers").

The statutes to which the County cites differ in significant ways from chapter 258 of the transportation code. The other statutory provisions set out fairly comprehensive schemes for filing and pursuing administrative complaints through a well defined process. More importantly, those statutes address complaints filed by an individual in response to a specific adverse action, and the time in which a complainant may pursue administrative remedies generally begins to run when he learns he has a grievance. *See* Tex. Gov't Code Ann. §§ 554.002-.006 (West 2004); Tex. Lab. Code Ann. §§ 21.201-.262 (West 2006); Tex. Loc. Gov't Code Ann. §§ 211.010(a), .011(a), (b); Tex. Educ. Code Ann. § 7.057, 21.209, .301, .307. *But see* Tex. Educ. Code Ann. § 7.057 (statute does not specify time to file appeal); Tex. Loc. Gov't Code Ann. § 211.010(b) (appeal to board of adjustment "must be filed within a reasonable time"); *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 789 (Tex. 1978) ("Texas law is firmly established that, when the statute fails to prescribe such a time limit, an appeal must be taken within a *reasonable* time.").

For instance, under the whistleblower act, an individual may file a complaint alleging governmental retaliation for a good-faith report of a violation of law within ninety days after the retaliation occurred or was discovered through reasonable diligence, Tex. Gov't Code Ann. § 554.006, and under the commission on human rights act, an individual may file a complaint alleging illegal employment practices within 180 days of the alleged illegal practice, Tex. Lab. Code Ann. §§ 21.201, .202. Under the local government code, municipalities must both post notice in the local newspaper *and* send notice of a proposed zoning change to each property owner who might be

6

affected, and a person aggrieved of a board decision may then appeal through the administrative process. Tex. Loc. Gov't Code Ann. §§ 211.007, .010, .011 (West 2008).

Chapter 258 of the transportation code, on the other hand, which implicates constitutionally protected property interests, does not ensure that an individual who stands to be adversely affected by an assertion of a public interest in a road will receive notice commensurate with the property interest at stake before the time to register a protest expires. It requires that notice of a hearing on a proposed map be run in the local newspapers in advance of the hearing; the map is not included in the notice but is made available for study at a public location. Tex. Transp. Code Ann. § 258.002(c), (d). It also requires that the commissioners court include "a notice of its intention to consider adoption of the county road map with the ad valorem tax statements for the year before" the map's adoption, including "a list of all roads in which the county will claim the existence of a public interest," the date of the public hearing on the map's adoption, and a statement that the property owner may protest under section 258.002(b). *Id.* § 258.005(a) (West Supp. 2008). The same general notice is sent to all property owners in the county, however, and the statute does not require specific, individual notice be provided to owners who will be individually affected. *See id.*

The County's interpretation would in this instance violate state and federal constitutional protections on property rights. The federal constitution "provides that 'private property [shall not] be taken for public use, without just compensation,'" and "article I, section 17 of the Texas Constitution provides, in pertinent part, that no 'person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made.'" *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998) (quoting U.S. Const. amend. V;

7

Tex. Const. art. I, § 17). Although there are several methods for acquiring private land for public roads, they have in common at least two requirements—specific notice must be provided to the affected property owners and compensation must be paid to property owners whose land is used for public purposes. *See id.* at 939 (to deprive individual of property right, government must give notice and meaningful opportunity to be heard); *Koch v. Texas Gen. Land Office*, 273 S.W.3d 451, 457-60 (Tex. App.—Austin 2008, pet. filed) (quoting *Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.] 2007, no pet.)) (noting that if government could claim immunity by merely claiming title in individual's land, condemnation would be unnecessary and individual would not receive compensation unless legislature granted permission to sue).

The transportation code sets out several provisions related to a county's establishment of and acquisition of private property for public roads. Residents may apply with their local commissioners court for a new road. Tex. Transp. Code Ann. § 251.052(a) (West 1999); *see also id.* § 251.053 (West 1999) (person without public road to property may apply for neighborhood road; application must name "persons that would be affected by the establishment of the road"; each affected property owner must be given notice of proposed road and informed of right to appear and protest; if neighborhood road is established, property owners must be paid damages). If a commissioners court decides to order a new road, it must appoint a "jury of view" of local property owners, which must issue written notice of the time "it will lay out the road or assess damages incidental to the opening of the road," giving notice to each property owner "through whose real property the road may pass"; the property owner may present a written statement of the damages he will incur and, if dissatisfied with the jury's decision and the commissioners court's award, appeal

8

the damages determination. *Id.* § 251.054(a), (e), (f), (g) (West 1999).[3]  In a municipality, a county

may, with the municipality's consent, condemn property for county roads through an eminent domain

proceeding. *Id*. § 251.101 (West 1999).  Finally, the property code sets out specific procedures and

requirements for condemning land through eminent domain. *See* Tex. Prop. Code Ann. §§ 21.001-

.102 (West 2000 & 2004 & Supp. 2008) (statutes governing eminent domain in general).[4]

      Thus, under any other provision related to public use of private land, specifically use

for public roads, before a county may acquire a public interest in a private road, establish a new

county road, or access road across private land, the affected land owner must be given personal

notice of the proposed acquisition and the opportunity to protest and/or present evidence of the

owner's damages. *See* Tex. Transp. Code Ann. §§ 251.053, .054, .101, 281.006 (West 1999).  More

importantly, a county is constitutionally and statutorily barred from taking private land for a public

road without paying the landowner for the privilege. *See id.* §§ 251.053(e), .054(e), (f), (g), .101,

---

[3] The "jury of view" method seems largely to have fallen by the wayside, with condemnation being used more frequently. *See* David B. Brooks, 36 Texas Practice 2d *County & Special District Law, Roads & Bridges* § 40.25 (2002) ("The county may proceed under its general eminent domain statutory authority or under the Transportation Code, which includes the use of a jury of view. . . . [A]s it now stands, with the availability of the general condemnation statutes, there is no reason for a county to open a road under the old jury of view method." (footnotes omitted)).

[4] The transportation code also provides that a county of fewer than 50,000 people "may acquire a public interest in a private road only by:  (1) purchase; (2) condemnation; (3) dedication; or (4) . . . adverse possession."  Tex. Transp. Code Ann. § 281.002 (West 1999).  In such a county, the commissioners court "may not assert a public interest in a private road" without giving written notice to the road's owner in person or by registered mail.  *Id*. § 281.006 (West 1999).  A person asserting an interest in that road may sue in district court within two years after (1) a county resolution declaring a public interest in the road or (2) the property owner is given notice of the county's intention, whichever is later.  *Id*. § 281.007 (West 1999).  We recognize that section 258.001 of the transportation code states that "[n]otwithstanding chapter 281, a county may clarify the existence of a public interest in a road as provided by this chapter," *id.* § 258.001 (West Supp. 2008), but we do not believe that the legislature intended to allow a county subject to chapter 281 to avoid notice and compensation provisions by availing itself of the roadmap adoption process.

281.002; *see also* Tex. Prop. Code Ann. §§ 21.014-.016, .018 (West 2004) (special commissioners must be appointed to assess property owner's damages; each party "is entitled to written notice" of damages hearing; party to condemnation proceeding may appeal special commissioners' findings), 21.041 (West 2000) (special commissioners must hear evidence related to value of land being condemned and injury to landowner), 21.042 (West Supp. 2008) (special commissioners must assess damages suffered by landowner); *Mayhew*, 964 S.W.2d at 933.

Samples was not served with specific notice of the County's intent to take a public interest in his private throughway, as required by the various condemnation statutes. *See* Tex. Transp. Code Ann. §§ 251.053, .054, .101, 281.006. He was provided a notice in his ad valorem tax statement, as required by section 258.005(b), that stated that Bastrop County intended to claim a public interest in the roads listed. However, the notice was a general announcement sent to all taxpayers in the county and did not specify that one of the roads runs across Samples's property. Further, the list included more than 1,000 roads, and Samples had no reason to know he should look for Martin's Crossing Drive or seek out the map to see whether the portion of the road that runs across his property was shown as public. Further, section 258.005, which requires that notice of a county's intention to adopt a road map be included in property tax statements, also requires that in the year following the map's adoption, the commissioners court must include in tax statements a second notice informing property owners of the map's adoption and (1) listing all the roads in which the county claimed a public interest and (2) informing the property owner of the date of the map's adoption and "the date on which the statute of limitations will bar a landowner from filing a suit in district court to dispute the county's claim." *Id*. § 258.005(b). It makes little sense

10

to require a second notice if the first is sufficient to put owners on notice of the possible loss of their property and their right to contest the claim of a public interest.

If we were to agree with the County's argument, the County would essentially be allowed to take Samples's private road without satisfying the statutory requirements for a taking, and chapter 258's roadmap provisions would trump the constitutionally mandated procedures for a governmental taking. *See Morgan v. Oliver*, 82 S.W. 1028, 1030 (Tex. 1904) ("At common law every proprietor holds his property subject to the right of the sovereign to take it for public use. That right, under the Constitution of this state, is subject to the condition that compensation for the property and for all damages incident to its taking must be assessed, and, except in case of the state itself, must be paid for or secured.")

Instead, we conclude that, unlike the comprehensive statutory frameworks cited by the County, the permissive language in chapter 258 of the transportation code is indeed permissive.[5]

---

[5] Our conclusion is supported by the bill analysis of H.B. 1117, which was enacted in 2003 as chapter 258 of the transportation code. *See* House Transp. Comm., Bill Analysis, Tex. H.B. 1117, 78th Leg., R.S. (2003). In that analysis, the committee noted that before chapter 258's enactment, there was no statute of limitations on when a landowner could challenge the public or private status of a road. *Id.* H.B. 1117 was intended to aid counties, which otherwise "will most likely lose in court" in the future, when they will likely be "unable to provide 'live bodies' with firsthand knowledge" of a road's genesis, resulting in counties losing the right to maintain what they consider to be public roads, "endanger[ing] the rights of those interior landowners who use the road[s] to access their propert[ies]." *Id.* Because it is difficult and prohibitively expensive for counties to determine ownership of all properties that adjoin all county roads, H.B. 1117 was intended to allow a county to adopt a proposed roadmap, placing notice of a hearing on the map in local newspapers. *Id.* "Landowners could protest in a public hearing or by mail. . . . After two years, if the landowner does not protest, the road becomes the responsibility of the county. If, after that two year period, the landowner decides to protest, the burden is on the landowner, not the county, to prove their case." *Id.* The committee stated that section 258.004

11

A property owner *may* file a protest at or before the hearing on a proposed map, which results in a jury considering the matter and making a decision that is binding on the commissioners court. *See* Tex. Transp. Code Ann. § 258.002(b). However, in the section titled, "Contest," the code provides that a property owner has two years after the adoption of a map to file suit to amend the map, making no reference to the protest option provided in section 258.002. *See id.* § 258.004(a).

We conclude that section 258.004 allows Samples to pursue his suit, which was timely filed within two years of the County's adoption of the roadmap, without first having filed a protest pursuant to section 258.002. We therefore reverse the trial court's order abating the proceeding and affirm the court's implicit denial of the County's plea to the jurisdiction. We dismiss the County's petition for writ of mandamus.

_____

David Puryear,  Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed in part; Reversed in part on Motion for Rehearing

Filed:  May 8, 2009

---

[a]uthorizes a person asserting a private right, title, or interest in a road in which a public interest is asserted under this chapter to contest the inclusion of the road in the County road map by filing a suit in a district court in the county in which the road is located not later than the second anniversary of the date on which the county road map including the road was adopted.

*Id.* The analysis does not suggest that a landowner must protest at or before the hearing in order to avail himself of the contest provision in section 258.004 and, indeed, states that a landowner has two years from the date the map is adopted to file suit protesting the inclusion of a road. *See id.*