

NUMBER 13-14-00373-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MCGRAW MINERALS, LTD.,                                              **Appellant,**

v.

COUNTY OF JASPER, TEXAS,                                          **Appellee.**

## On appeal from the 1st District Court
## of Jasper County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Benavides and Perkes**
**Memorandum Opinion by Justice Garza**

Appellant, McGraw Minerals, Ltd. ("McGraw" or "McGraw Minerals"), filed suit to contest the inclusion of a road in a county road map adopted under chapter 258 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 258.004 (West, Westlaw through 2013 3d C.S.). The trial court granted summary judgment in favor of appellee, the County of Jasper, Texas (the "County"). McGraw argues by three issues on appeal

that the trial court erred. We reverse and remand.[1]

## I. BACKGROUND

This case concerns a stretch of unpaved road measuring approximately three-quarters of a mile and situated outside the town of Buna in Jasper County. The road at issue begins at the end of the paved portion of County Road 707 in the north[2] and terminates at the intersection with County Road 715 in the south. On July 9, 2007, the County adopted an official road map which designated the road at issue as part of County Road 707.

On July 25, 2007, McGraw acquired the property which the road traverses. It later timely filed a petition to contest the road's inclusion in the county road map. *See id.* In its petition, dated May 8, 2008, McGraw alleged that the road at issue "has not been graded or maintained by the County . . . in more than 30 years" and "has not been continuously maintained by the County." The County answered and filed a counterclaim seeking "[o]rders that establish the right of [the County] to continue maintenance of the road known as County Road 707 as it crosses the disputed property of [McGraw] . . . ."

Both parties filed motions for summary judgment in late 2013. McGraw asserted in its motion that there are no issues of material fact and that it is entitled to judgment as a matter of law. The County argued in its motion that it had properly asserted a public interest in the road at issue because prescriptive and implied easements were established along the entire length of County Road 707, including the unpaved portion that traverses

---

[1] This appeal was transferred from the Ninth Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[2] The paved portion of County Road 707 extends eastward and terminates at the intersection with Farm-to-Market Road 1004 in Buna.

McGraw's property. The County further argued that McGraw's claims are barred by limitations. Both parties attached evidence to their motions.

The trial court granted the County's motion and denied McGraw's motion. Its order contained a declaration, as requested by the County, that "Jasper County Road 707 is a public road, subject to county maintenance, from its point of origin at the intersection of Jasper County Road 707 with Farm-to-Market Road 1004 to a point of terminus at the intersection of Jasper County Road 707 with Jasper County Road 715." The trial court subsequently issued findings of fact and conclusions of law pursuant to McGraw's request.[3]

---

[3] The findings and conclusions stated as follows:

Findings of Fact:

1. The road in dispute, County Road 707, and specifically as the same crosses land owned by [McGraw], has for many years been reflected upon official road maps as a county maintained road.

2. The road in dispute was previously the subject of litigation, in which the trial court made findings regarding a Temporary Injunction Order which among other things determined that the road now in dispute, County Road 707, was a third class public road.

3. Bill F. McGraw, the prior title owner of said land now owned by [McGraw Minerals], had personal knowledge of the prior findings of the District Court of Jasper County regarding the public nature of County Road 707, as the said road burdens the [McGraw] property.

4. Jasper County has maintained the roadway in dispute for many, many years, and has continued to assert a public interest in said roadway, and has continued to maintain the roadway.

Conclusions of Law:

1. Jasper County has established, to the Court's satisfaction, an implied dedication of the disputed roadway, there being sufficient evidence that County Road 707 has been under continuous maintenance and claimed as a public roadway for many years.

2. Jasper County is not limited by the provisions of Chapter 258, Texas Transportation Code, but is entitled to establish its right to continue maintenance of County Road 707 by any applicable theory of law, including implied dedication, prescriptive easement, estoppel, or limitations.

3. Jasper County is entitled to continue maintenance of County Road 707, including both the traveled portion of the roadway, but also the necessary drainage area related to the roadway, as it crosses the property owned by [McGraw].

This appeal followed.[4]

## II. DISCUSSION

On appeal, McGraw argues that the trial court erred by (1) "applying a standard to Chapter 258 that contradicts the Legislature's intent and renders certain provisions meaningless," (2) granting summary judgment despite the existence of questions of fact, and (3) unconstitutionally "depriving [McGraw] of its property without compensation."

A.      **Applicable Law and Standard of Review**

1.      **Summary Judgments**

In advancing a traditional motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). An issue of fact is raised if more than a mere scintilla of evidence is produced as to each essential element of the claim. *See, e.g., City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). Evidence is less than a scintilla is if it is "so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010). Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded

---

4.      County Road 707, in its entirety, inclusive of traveled roadbed and drainage area, from its point of intersection with Farm to Market Road 1004 to a point of terminus at the intersection of Jasper County Road 707 with Jasper County Road 715, is a public road subject to county maintenance.

[4] Neither summary judgment motion specified whether it applied to McGraw's affirmative claim, the County's counterclaim, or both. Moreover, the order on appeal does not state to whose claim it applied, and it does not explicitly state that it disposed of all pending claims and parties. Nevertheless, we have jurisdiction because the order on appeal "actually disposes of every pending claim and party." *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001) (noting that an appeal may ordinarily only be taken from a final judgment and that "when there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties").

people to differ in their conclusions." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011).

We review summary judgments de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied). We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe*, 145 S.W.3d at 157. "When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious." *Merriman*, 407 S.W.3d at 248.[5]

We note that there appears to be confusion about the procedural posture of the case and the applicable standard of review. In its appellate brief, the County refers extensively to the trial court's findings of fact and conclusions of law, and it cites case law reciting that a trial court's findings of fact "have the same force and effect as findings by a jury," that we may not reverse "[i]f there is any probative evidence supporting the trial court's judgment," and that we "must . . . rely on the findings of fact and may not substitute [our] own findings for those of the trial court's findings." *See, e.g., Cenizo Corp. v. City of Donna*, No. 13-12-00308-CV, 2013 WL 1800270, at *1 (Tex. App.—Corpus Christi Apr. 25, 2013, no pet.) (mem. op.). But, as McGraw notes in its reply brief, these propositions of law apply only to appeals from judgments rendered after a full trial on the merits. *See,*

---

[5] Ordinarily, when both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Here, however, McGraw's three issues on appeal argue exclusively that the trial court erred in granting summary judgment to the County. It does not argue, implicitly or explicitly, that the trial court erred in denying its summary judgment motion. Accordingly, we do not address that issue.

*e.g., id.* ("Findings of fact *in a bench trial* have the same force and effect as findings by the jury." (Emphasis added)).[6]  Here, the record unequivocally establishes that the case was before the trial court on motions for summary judgment and that no trial on the merits was held.  The County's appellate brief acknowledges this.[7]

As noted, a trial court's task at the summary judgment stage is merely to determine, from the evidence presented, whether a disputed issue of material fact has been raised as to each essential element of the claims raised in the pleadings.  *See* TEX. R. CIV. P. 166a(c).  Accordingly, at the summary judgment stage of proceedings, findings of fact and conclusions of law "can have no purpose and should not be requested, made, or considered on appeal." *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997); *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994) ("[F]indings of fact and conclusions of law have no place in a summary judgment proceeding . . . ."); *Jacobs v. Huser Constr., Inc.*, 429 S.W.3d 700, 707 n.4 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. R. CIV. P. 296 ("In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of

---

[6] The County also cites case law stating that "[u]nchallenged findings of fact are binding on the appellate court unless the findings cannot be supported as a matter of law or there is no evidence to support the finding"; and that when, as here, there is no reporter's record filed, "this Court must review the judgment of the trial court in the light most favorable to the Appellant and must not substitute its own findings for that of the trial court." *See In re Estate of Elders*, No. 13-11-00467-CV, 2012 WL 3757501, at *1 (Tex. App.—Corpus Christi Aug. 29, 2012, no pet.) (mem. op.); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 147 (Tex. App.—Dallas 2012, no pet.).  These propositions of law are also plainly inapplicable in an appeal from a summary judgment.

[7] The content of the findings and conclusions reflects that the trial court was also confused as to the procedural posture.  One of the trial court's conclusions of law was that there was "sufficient evidence" to show an implied dedication of the road at issue.  But whether property has been implicitly dedicated for public use is a question of fact. *Lindner v. Hill*, 691 S.W.2d 590, 591 (Tex. 1985); *McCulloch v. Brewster Cnty.*, 391 S.W.3d 612, 616 (Tex. App.—El Paso 2012, no pet.); *Scott v. Cannon*, 959 S.W.2d 712, 718 (Tex. App.—Austin 1998, pet. denied).  Therefore, no matter how "sufficient" the evidence is supporting implied dedication, summary judgment would only be proper if McGraw was unable to create a fact issue by producing more than a scintilla of evidence that there was no implied dedication. *See* TEX. R. CIV. P. 166a(c).

6

law."). We will therefore disregard the findings, *see IKB Indus.*, 938 S.W.2d at 443; *Jacobs*, 429 S.W.3d at 707 n.4, and review the judgment de novo. *See Merriman*, 407 S.W.3d at 248.

### 2. Transportation Code Chapters 258 and 281

Chapter 258 of the Texas Transportation Code allows a county to adopt a county road map in order to "clarify the existence of a public interest in a road." TEX. TRANSP. CODE ANN. § 258.001 (West, Westlaw through 2013 3d C.S.). The chapter applies only to a county that "initiates or completes compliance" with the chapter's provisions before September 1, 2011. *Id.* § 258.007 (West, Westlaw through 2013 3d C.S.).[8] Pursuant to chapter 258, a county may include in the map "each road in which the county claims the existence of a public interest: (1) under Chapter 281 or other law; or (2) as a result of having continuously maintained the road with public funds beginning before September 1, 1981." *Id.* § 258.002(a) (West, Westlaw through 2013 3d C.S.). A road's inclusion in a road map adopted under chapter 258 then serves as "conclusive evidence" of (1) the public's right of access over the road, and (2) the county's authority to spend public money to maintain the road. *Id.* § 258.003 (West, Westlaw through 2013 3d C.S.).

A person may appear before the county commissioners court or file a written protest with the county judge to protest the county's claim of a public interest in a road. *Id.* § 258.002(b). If a protest is filed, the commissioners court must appoint a "jury of view" consisting of "five property owners who have no interest in the outcome of the protest" to determine the validity of the county's claim. *Id.* A person may also "contest the inclusion

---

[8] It is undisputed that the County "initiate[d] or complete[d] compliance" with the provisions of chapter 258 prior to September 1, 2011. *See* TEX. TRANSP. CODE ANN. § 258.007 (West, Westlaw through 2013 3d C.S.).

7

of the road in the county road map by filing a suit in a district court in the county in which the road is located not later than the second anniversary of the date on which the county road map including the road was adopted." *Id.* § 258.004(a). In a contest suit, "[t]he county has the burden of proving that the county has continuously maintained, as that term is defined by Section 258.002, the road in question." *Id.* § 258.004(b). A party need not first file a protest with the commissioners court or county judge in order to file a contest suit in the district court. *Bastrop Cnty. v. Samples*, 286 S.W.3d 102, 109 (Tex. App.—Austin 2009, no pet.).

Under common law, a county may acquire a public interest in a private road through the owner's express or implied dedication of the road for public use. *McCulloch v. Brewster Cnty.*, 391 S.W.3d 612, 616 (Tex. App.—El Paso 2012, no pet.). However, with the enactment of chapter 281 in 1981, the Texas Legislature effectively abolished implied dedication for roads in counties with populations of 50,000 or less.[9] *See id.* at 616 n.1. Under chapter 281, such counties may acquire a public interest in a private road only by: (1) purchase; (2) condemnation; (3) express dedication; or (4) a court's final judgment of adverse possession. *Id.* § 281.002 (West, Westlaw through 2013 3d C.S.); *see id.* § 281.003(b) (West, Westlaw through 2013 3d C.S.) (stating that "[a]n oral dedication or intent to dedicate by overt act is not sufficient to establish a public interest in a private road" under chapter 281).

Nevertheless, chapter 281 does not apply retroactively. *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985); *Las Vegas Pecan & Cattle Co. v. Zavala Cnty.*, 682 S.W.2d 254, 256 (Tex. 1984). Therefore, the statute does not affect implied dedications made before

---

[9] It is undisputed that Jasper County has a population of 50,000 or less.

the statute's effective date of August 31, 1981. *Lindner*, 691 S.W.3d at 592; *Las Vegas Pecan & Cattle Co.*, 682 S.W.2d at 256 (finding that the predecessor to chapter 281 "does not divest the County" of an "easement resulting from an implied dedication of public use of the road in question prior to the effective date of the statute"); *see Mitchell v. Ballard*, 420 S.W.3d 122, 130 (Tex. App.—Texarkana 2012, no pet.); *Scown v. Neie*, 225 S.W.3d 303, 309 (Tex. App.—El Paso 2006, pet. denied) (noting also that, "[i]f an implied dedication occurred prior to [the effective] date by a previous owner, a subsequent purchase of the property does not affect the dedication"); *see also* Act of May 31, 1981, 67th Leg., R.S., ch. 613, 1981 TEX. GEN. LAWS 2412–13, *amended by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 TEX. GEN. LAWS 1025, 1195–96.

## B.     Summary Judgment Evidence

McGraw's summary judgment motion included an affidavit by its founder, manager and attorney, Bill F. McGraw. McGraw stated in the affidavit that he and his wife owned the property at issue prior to transferring it to McGraw Minerals in 2007; that the road at issue "has not been continuously maintained" by the County; that, prior to the lawsuit, the last time the County graded the road was in 1987, which was the first time the road had been graded or maintained by the County in eight years; and that, in October of 1987, McGraw "personally filed a lawsuit for J. A. Adams . . . concerning the road in question and was successful in obtaining an injunction against the County." The affidavit stated the County "did not grade or maintain the subject road, at all, or spend any taxpayer money on this road from September 28, 1987, until May 6, 2010, nearly two years after our lawsuit . . . ." According to McGraw, from 1987 to 2008, he "personally paid for all the grading, maintenance and upkeep" of the road at issue.

9

Other evidence attached to McGraw's motion included: (1) the general warranty deed transferring the property to McGraw Minerals; (2) applications filed with the Texas Railroad Commission to drill wells on the property; (3) photographs of the road and the property; and (4) a letter from McGraw to the County's counsel dated October 17, 2007, stating in part that "I carefully complied with all the applicable mandates of Section 251.052, Subsection (a), (b) and (c), Transportation Code." The 2007 letter also stated that "[t]he portion of [County Road] 707 I want discontinued serves no public purpose" and that, "[a]s I understand the statutes, if I recognize a public road, I am estopped from questioning its legality."

In support of its motion, the County attached, among other things, a December 2, 1987 district court order granting a temporary injunction to J.A. Adams, who was represented by McGraw, in a suit filed against the County regarding the same road. The order refers to gates that had been placed on the road between September and October of 1987 and states, among other things: "The road in question is a public road"; "There is no record of any deed or easement to the [County] for the road right-of-way in question"; and "The gates are necessary . . . for protection of Plaintiff's property." The order enjoined the county and its commissioners from: (1) "Taking further action to classify the road in question based upon a less than unanimous vote"; (2) "treating the road in question as a Class 2 road"; (3) "widening or causing the widening of the road in question in any manner from its present condition"; (4) "removing or causing the removal of the gates on the road in question"; or (5) "interferring [sic] with Plaintiff's use of the gates on the road in question."

Also attached to the County's motion were four certified copies of "historical general highway maps" of the area from Texas Department of Transportation records, two of which are dated 1936 and two of which are dated 1971. The maps each appear to depict the road at issue.

The County's motion was further accompanied by four affidavits executed by long-time residents of the area. Aubrey Cole, a former Jasper County Sheriff, stated that he has lived in the Buna area for 83 years and that County Road 707 "has always run from what is today FM 1004 to what is now County Road 715, although those roads had different names back then." Cole stated: "For as long as I can remember, which is back some 75 years, County Road 707 has been a public road and it was open to the public and was regularly traveled by everyone and it was also used by the mail carriers." He stated that "[t]his road has always been maintained by Jasper County." Willie Martin stated that he is 70 years old and that he has lived on County Road 707 "or in the immediate area" for his entire life. Martin stated: "It has always been common knowledge that this is a county road. During my lifetime, and at all times to my knowledge, what I know as County Road 707 has always been that length of road from FM 1004 all the way to County Road 715." He stated: "I remember seeing the county's maintainer passing my grandparents' house throughout the years. We would be outside on the porch and see the maintainer pass as it repaired the road." According to Martin, "[t]his roadway has always been open to public use, has been under regular and routine Jasper County maintenance, and has not been closed to public use at any time." Charles Eaves stated in part that he worked for the County for twenty years starting in 1972 and that he has "graded all the roads within Precinct 4 during [his] employment, including what is now

11

called County Road 707 . . . ." Mack Rose, a former county commissioner, stated in part that, "so far as I am aware, [the County] has maintained what is now known as County Road 707 as far back as anyone remembers."

**C.    Construction of Chapter 258**

McGraw contends by its first issue that the trial court incorrectly applied chapter 258. Our primary objective when construing a statute is to give effect to the Legislature's intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We seek that intent first and foremost in the statutory text, *see id.*, and we rely on the plain meaning of the text unless a different meaning is supplied by legislative definition or enforcing the plain language would produce absurd results. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

McGraw argues in particular that the trial court impermissibly allowed the County to claim a public interest in the road at issue by means other than continuous maintenance since before 1981. McGraw contends that, "[r]egardless of the method of protest or the basis of the county's claim, Chapter 258 is very clear: the county has the burden of showing continuous maintenance of the road in question from before September 1, 1981." *See* TEX. TRANSP. CODE ANN. § 258.004(b) (stating that, in a map contest suit, "[t]he county has the burden of proving that the county has continuously maintained, as that term is defined by Section 258.002, the road in question"); *see also id.* § 258.002(h) ("In this section, 'continuous maintenance' means grading or other routine road maintenance beginning before September 1, 1981, and continuing until the date of protest.").

The Waco Court of Appeals considered this issue in *Coryell County v. Harrell*, 379 S.W.3d 345, 350–51 (Tex. App.—Waco 2011, no pet.). There, Coryell County argued

12

that, "because continuous maintenance is the only type of claim for which the Legislature specified the burden of proof, then necessarily it is the only type of claim that can be contested by the contest provision." *Id.*[10] The court disagreed, concluding that continuous maintenance is merely "a particular type of claim to a road" by a county, and that section 258.004(b) "simply clarified [that] for this one type of claim, when contested under section 258.004(a), . . . the burden of proof is on the county." *Id.* at 351.

> For all other claims to a public interest in a road under section 258.002, case authority, the ordinary rules of pleading, procedure and proof, and the nature of the interest that is being asserted provide the manner in which these contests will be decided. Thus, to the extent that the County's claim is a public right by dedication, the [plaintiffs] must defeat that claim by establishing, for example, a title superior to the claim of express dedication or a defective dedication. But to the extent the County claims as an alternative basis for the public interest in the road that it was continuously maintained by the County, the burden will be on the County.

*Id.*

We concur with the conclusion of the *Harrell* court. Section 258.002(a) states that a county may claim a public interest in a road in one of two ways: "(1) under Chapter 281 or other law; or (2) as a result of having continuously maintained the road with public funds beginning before September 1, 1981." TEX. TRANSP. CODE ANN. § 258.002(a). Although section 258.004(b) states that the "[t]he county has the burden of proving" continuous maintenance, the subsection does not state that it applies to *all* map contest suits brought under section 258.004(a), without regard to whether the County is actually asserting a public interest due to continuous maintenance. *See id.* § 258.004(b). The

---

[10] Coryell County took this position in the context of its broader argument that chapter 258 does not contain a clear waiver of governmental immunity for a map contest suit. *See Coryell Cnty. v. Harrell*, 379 S.W.3d 345, 350–51 (Tex. App.—Waco 2011, no pet.). The court found that immunity was effectively waived for all map contests under chapter 258, including those where the alleged public interest is not based on continuous maintenance. *Id.* at 350–51.

13

statute does not state which party bears the burden of proof when the county asserts a public interest in a road by means other than continuous maintenance. *See id.* And it does not explicitly state that continuous maintenance is the *only* way a county may claim a public interest in a road—if it did, it would conflict with section 258.002(a). *See id.* §§ 258.002(a), 258.004.

As the Waco court noted with admirable restraint, the statute is not a "model of perfect clarity." *Harrell*, 379 S.W.3d at 349. But we will not construe the statute in a manner that would result in an internal conflict. *See* TEX. GOV'T CODE ANN. § 311.021(2) (West, Westlaw through 2013 3d C.S.) (providing that it is assumed, when the Legislature enacts a statute, that it intends for the "entire statute . . . to be effective"); *id.* § 311.026 (West, Westlaw through 2013 3d C.S.) ("If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both."); *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("We construe statutes to give effect to every provision and ensure that no provision is rendered meaningless or superfluous."). Instead, we construe section 258.004(b) as being applicable only to the extent a county actually asserts continuous maintenance as the basis for its claim to a public interest. *See Harrell*, 379 S.W.3d at 351. To hold otherwise would be contrary to the intent of the legislature as evidenced by section 258.002, which allows a county to claim a public interest in a road "under Chapter 281 or other law." TEX. TRANSP. CODE ANN. § 258.002(a)(1); *see Harrell*, 379 S.W.3d at 351.

McGraw cites two opinions from other Texas courts of appeals which it contends are in conflict with *Harrell*. In *Wallace v. Kent County*, a jury found that Kent County had properly established a public interest in a road for three reasons: (1) the county had

14

continuously maintained the road with public funds since before September 1, 1981; (2) the county was entitled to a prescriptive easement prior to September 1, 1981; and (3) the county proved that the road had been implicitly dedicated to public use before September 1, 1981. No. 07-11-00427-CV, 2013 WL 4531253, at *1 (Tex. App.—Amarillo Aug. 21, 2013, no pet.) (mem. op.). The Amarillo court of appeals sustained the appellant's issues arguing that the evidence was insufficient to support the prescriptive easement and implied dedication findings. *Id.* at *5–7. The court then concluded, *sua sponte*, as follows:

> Even if Kent County were able to establish a prescriptive easement or implied dedication of the disputed road prior to September 1, 1981, we also find there is no evidence Kent County asserted any valid claim of the existence of a public interest in the disputed road because the county failed to come forward at trial with any "written records or other information documenting" the road's continuous maintenance since before September 1, 1981. . . . Although Chapter 258 was enacted to assist counties to prove up a public interest in roads, we cannot ignore Chapter 258's plain language.

*Id.* at *7. By "Chapter 258's plain language," the Amarillo court seemed to be referring to subsection (b) of section 258.002, which pertains exclusively to protest proceedings in the county commissioners court and which states: "A county has a valid claim of the existence of a public interest in a road if it provides written records or other information documenting the county's continuous maintenance of the road beginning before September 1, 1981." TEX. TRANSP. CODE ANN. § 258.002(b).[11] We note that the plaintiff

---

[11] The entire subsection reads as follows:

A commissioners court that proposes a county road map under this section shall hold a public meeting at which a person asserting a private right, title, or interest in a road in which the county has claimed the existence of a public interest may appear before the commissioners court to protest the county's claim. A person asserting a private right, title, or interest in a road may also file a written protest with the county judge at any time before the public meeting. The commissioners court shall appoint a jury of view consisting of five property owners who have no interest in the outcome of the protest to determine, by a majority vote after a public hearing and an examination of the county's road maintenance

in *Wallace* apparently never filed a protest with the commissioners court. *See* 2013 WL 4531253, at *1 ("Wallace initially sought to contest this inclusion by filing suit in district court pursuant to section 258.004(a)."). It is unclear from the record whether McGraw ever filed a protest with the commissioners court. In any event, the judgment on appeal is an order from the district court in a map contest suit under section 258.004. Accordingly, to the extent the *Wallace* court concluded that a showing of "written records or other information documenting . . . continuous maintenance" is the exclusive method by which a county may prevail in a map protest proceeding before the commissioners court, that conclusion is immaterial to our analysis. On the other hand, to the extent the *Wallace* court concluded that such a showing is required in a map contest suit filed in district court, that conclusion has no basis in the statute, and we disagree with it.

McGraw also cites *Bastrop County v. Samples*, in which the Austin court of appeals concluded that a party seeking to challenge the inclusion of a road in the county road map need not file a protest with the commissioners court under section 258.002(b) prior to filing a contest suit in district court under section 258.004. 286 S.W.3d at 103. The court noted in passing that "[t]he county has the burden of proving that the county has continuously maintained . . . the road in question." *Id.* (quoting TEX. TRANSP. CODE ANN. § 258.004(b)). The court did not address whether a county, in a map contest suit, may

---

records and other information, the validity of the county's claim of the existence of a public interest in the road. A county has a valid claim of the existence of a public interest in a road if it provides written records or other information documenting the county's continuous maintenance of the road beginning before September 1, 1981. The determination of the jury of view is binding on the commissioners court, and the commissioners court shall revise the proposed county road map accordingly.

TEX. TRANSP. CODE ANN. § 258.002(b); *see supra* n.6.

16

claim a public interest in a road by means other than continuous maintenance. Accordingly, *Samples* is inapposite to our analysis.

McGraw alleges that the interpretation of section 258 espoused in *Harrell* is contrary to legislative intent, pointing to a Texas House of Representatives analysis of the bill that became chapter 258, which states in part: "The bill . . . would require a county to validate its claim to the road by providing written records or other information documenting 'continuous maintenance'—defined as grading or other routine maintenance—beginning before September 1, 1981." House Comm. on Transp., Bill Analysis, Tex. H.B. 1117, 78th Leg., R.S. (2003).[12] But the same analysis states, two sentences later, that "[a] county commissioners court could propose a county road map showing roads acquired by purchase, condemnation, dedication, or a court's final judgment of adverse condemnation under Transportation Code, sec. 281.002, *or* roads claimed as public roads because of continuous maintenance with public funds beginning before September 1, 1981." *Id.* (emphasis added). We do not believe that our interpretation of the statute frustrates any intent of the legislature as evidenced by this bill analysis.

McGraw further contends that the County "should be estopped from asserting that a standard other than continuous maintenance applies in this case." *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) ("Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken."). McGraw directs us to a document entitled "Jury of View Selection and Duties" which was attached to its summary judgment motion, and which states, under the heading "Duty of Jury of View," as follows:

---

[12] A copy of the bill analysis was attached to the County's summary judgment motion.

17

> According to § 258.002 of the Transportation Code, the duty of the Jury of View is to determine: the validity of the county's claim of the existence of a public interest in the road. A county has a valid claim of the existence of a public interest in a road if it provides written records or other information documenting the county's continuous maintenance of the road beginning before September 1, 1981.

McGraw also directs us to the order adopting the road map that is the subject of this case, which was also attached to the County's motion. The order lists four protests that were considered and ruled upon by a jury of view appointed by the commissioners court; each of the protests argued that the county had not continuously maintained the road sought to be included in the map.

We do not believe these documents support McGraw's argument. They pertain only to map protests filed with the commissioners court, not map contest suits filed with the district court. As noted, the statute governing map protests before the commissioners court states that "[a] county has a valid claim of the existence of a public interest in a road if it provides written records or other information documenting the county's continuous maintenance of the road beginning before September 1, 1981," TEX. TRANSP. CODE ANN. § 258.002(b), but the statute governing map contests in the district court does not contain such language. *See id.* § 258.004(b). Section 258.004(b) does state that "[t]he county has the burden of proving that the county has continuously maintained . . . the road in question," *id.*, but we have already determined that this does not mean that continuous maintenance is the exclusive means by which a county may claim a public interest in a contest suit. Instead, a county may also claim a public interest "under Chapter 281 or other law." *Id.* § 258.002(a). We disagree that, on the basis of these documents, the County should be estopped from asserting a public interest in a road by means other than continuous maintenance.

18

Finally, we disagree with McGraw's contention that, under *Harrell*, section 258.004(b) and parts of section 258.002(b) are rendered meaningless. *See Columbia Med. Ctr. of Las Colinas, Inc.*, 271 S.W.3d at 256. Rather, under this construction, the provision in section 258.002(b) requiring "written records or other information documenting the county's continuous maintenance" would still apply in map protest proceedings before the commissioners court to the extent a county alleges a public interest in a road based on continuous maintenance. *See* TEX. TRANSP. CODE ANN. § 258.002(b). Similarly, section 258.004(b), regarding the county's burden to prove continuous maintenance in a contest suit, would still apply in a map contest suit to the extent a county alleges a public interest in a road based on continuous maintenance. *See id.* § 258.004(b).

For the foregoing reasons, we overrule McGraw's first issue.

## D.    Fact Issues

Having concluded that chapter 258 permits a county in a contest suit to claim a public interest in a road by means other than continuous maintenance, we proceed to consider the merits of the County's summary judgment motion.

The only bases for a public interest asserted by the County in its motion are prescriptive easement and implied dedication.[13]  "To obtain a prescriptive easement one

---

[13] Although the County asserts on appeal that it presented "evidence to support the contention of longstanding county maintenance existing both prior and subsequent to 1981," it did not argue in its summary judgment motion that there was a public interest in the road due to continuous maintenance. Therefore, the trial court could not have properly granted the motion on this ground. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (noting that summary judgments "may only be granted upon grounds expressly asserted in the summary judgment motion"). Even if the County did raise this issue in its motion, summary judgment would not be proper because fact issues were raised by McGraw's affidavit, which stated that the County maintained the road only once between 1979 and 2008. *See* TEX. R. CIV. P. 166a(c); *see also* TEX. TRANSP. CODE ANN. § 258.002(h) (defining "continuous maintenance" as "grading or other routine road maintenance beginning before September 1, 1981, and continuing until the date of protest").

19

must use someone else's land in a manner that is open, notorious, continuous, exclusive, and adverse for the requisite period of time." *Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979). The essential elements of implied dedication are: (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) the landowner was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication. *Las Vegas Pecan & Cattle Co.*, 682 S.W.2d at 256. Implied dedication "requires showing unmistakable acts on the part of the landowner that clearly establish his intent to donate the land to public use." *Long Island Owner's Ass'n, Inc. v. Davidson*, 965 S.W.2d 674, 679 (Tex. App.—Corpus Christi 1998, pet. denied). Because chapter 281 does not permit a county to claim a public interest in a road by prescriptive easement or implied dedication, any such interest must have been established prior to August 31, 1981, the effective date of the statute. *See* Tex. Transp. Code Ann. § 281.002; *Las Vegas Pecan & Cattle Co.*, 682 S.W.2d at 256.

The County points to affidavit testimony by Cole, Martin, Eaves, and Rose which it contends establishes that "the roadway has been county maintained at the public's expense, and that such maintenance has been regular and routine over many, many years." The County also argues that the road maps attached to its motion "reflect that the roadway now known as County Road 707 has been in existence in the same configuration as it has today since at least 1936" and show "a consistent and uninterrupted chain of public road maintenance of what is today known as Jasper County Road 707 from 1936 until the present day."[14]

---

[14] We note that the maps, as they appear in the record before this Court, are blurry and the legends are illegible. Although they each appear to depict the road at issue, there was no evidence adduced that

The County did not establish its entitlement to judgment as a matter of law on either prescriptive easement or implied dedication.[15]  *See* TEX. R. CIV. P. 166a(c).  Even assuming that the County's evidence establishes the facts which the County claims it establishes, it was contradicted by McGraw's affidavit stating that the County "graded or maintained" the road only once between 1979 and the time he filed his contest suit. Moreover, the County's evidence does not establish that its use of the road at issue was "open, notorious, continuous, exclusive, [or] adverse," *see Brooks*, 578 S.W.2d at 673, or that any landowner committed acts that "induced the belief that the landowner intended to dedicate the road to public use" or that there was any "offer and acceptance" of a dedication.  *See Las Vegas Pecan & Cattle Co.*, 682 S.W.2d at 256.

The County further argues on appeal as follows:

> Ironically, the same act that serves to estoppel [sic] McGraw and his successors in title from claiming County Road 707 as a private road is also evidence of implied dedication.  By admitting that the road was a county road that he had a right to gate, McGraw sought permission from the County Commissioners Court to erect a gate.  To do that, McGraw had to admit that the road was a public road under the control of the Jasper County Commissioners Court.  McGraw admitted that he could not lock the gate upon the public road.  By seeking to install a gate on what Appellant's former and present lawyer admitted was a public road maintained by Jasper County in 1987, the nature of the roadway was established.  It is admitted by all parties that Jasper County never acquired a right-of-way across Appellant's property by deed or purchase, so the only way Jasper County could have acquired the necessary right-of-way for the existence of the public road McGraw sought to gate was by prescription or implied dedication.  Implied dedication can be inferred by acts or deed.  By admitting

all roads depicted in the map are necessarily public roads.  Additionally, the affidavits of Eaves and Rose merely established that the county regularly maintained the road known as "County Road 707"; they do not specifically refer to the portion of that road at issue in this case.

[15] Consistent with its apparent misunderstanding of the procedural posture of the case and the standard of review applicable to the appeal, the County does not assert on appeal that its summary judgment evidence conclusively established a prescriptive easement or implied dedication such that no fact issue was raised.  Instead, it argues that its evidence "rebutted" and "contradict[ed]" McGraw's evidence.

21

that the county had such a right-of-way, Appellant concedes that the Court's finding of implied dedication is sustained by the evidence.

(Citations omitted.) The County appears to be referring here to two pieces of evidence attached to its motion: (1) the injunction entered in the 1987 suit filed by McGraw as attorney for J.A. Adams in which Adams apparently sought to prevent the County from removing a gate Adams installed on the road; and (2) the 2007 letter from McGraw to the county's counsel. The injunction states in part that "[t]he road in question is a county road"; but as the County concedes on appeal, the lawsuit was eventually dismissed and "it is doubtful that the concepts of judicial estoppel or claims preclusion apply in the absence of a final judgment in that cause."[16] The County further argues on appeal that McGraw's 2007 letter "refers to [section] 251.010 of the Texas Transportation Code" and that this statute applies only to public roads. *See* TEX. TRANSP. CODE ANN. § 251.010 (West, Westlaw through 2013 3d C.S.) (providing in part that "[a] person, including a neighborhood association, who owns or controls real property on which a third-class road or a neighborhood road established under Section 251.053 is located for which the right-of-way was obtained without cost to the county may erect a gate across the road when necessary"). We have reviewed the letter and can locate no reference to this statute. McGraw does state in the letter that he "carefully complied with all the applicable mandates of Section 251.052, Subsection (a), (b) and (c), Transportation Code," but this

---

[16] Another reason judicial estoppel and claim preclusion would not apply is that McGraw was not a party to the 1987 litigation. *See Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009) ("Judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage."); *Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 58 (Tex. 2006) ("The doctrine of res judicata, or claim preclusion, bars a second action by parties and their privies on matters actually litigated in a previous suit, as well as claims which, through the exercise of diligence, could have been litigated in a prior suit." (Internal quotations omitted)).

statute does not explicitly state that it applies only to public roads. *See id.* § 251.052 (setting forth a procedure by which "[t]he residents of a precinct may apply for a new road or a change in an existing road"). In any event, to the extent the letter constitutes evidence that McGraw or any predecessor "admit[ted] that the road was a public road," as the County suggests, that evidence was contradicted by McGraw's affidavit and therefore would not establish the County's entitlement to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c).[17]

Finally, the County asserted in its motion that summary judgment was warranted on the basis of limitations.[18] In particular, it argued:

> Upon assumption of title, Plaintiff is charged with notice of visible easements upon the ground. . . . [McGraw and McGraw Minerals] had acknowledged in recorded legal instruments the existence of a county road upon the entirety of the real property they owned. Had there been any dispute regarding the status of the road, these predecessors in title, including the Plaintiff herself [sic], should have resolved the matter or suffer a bar to claims by way of limitations imposed by the two year period of limitations regarding real estate contained in § 16.024 and § 16.003 of the Texas Civil Practice and Remedies Code. . . . As a consequence, Plaintiff was charged with notice of the existence of these road easements, and if it felt its property interests were in jeopardy, a suit to quiet title claim should have been asserted within the applicable periods of limitation. Having failed to raise or litigate the issue, Plaintiff is now time barred.

The County did not cite any evidence, and we find none in the record, establishing that McGraw or any previous owner "acknowledged in recorded legal instruments the existence of a county road upon the entirety of the real property they owned." In any

---

[17] The County appears to also contend that the letter constitutes a judicial admission by McGraw that the road at issue is a public road. But this argument was not made in the County's summary judgment motion. Accordingly, the motion could not have been properly granted on this ground. *See G & H Towing Co.*, 347 S.W.3d at 297.

[18] Although the County does not address the limitations issue on appeal, we consider whether summary judgment was proper on this ground because it was raised in the motion and the trial court did not specify the grounds for its ruling in its order. *See Merriman*, 407 S.W.3d at 248.

23

event, there is no dispute that McGraw filed his map contest suit within the two-year limitations period following the adoption of the map, as specified in chapter 258. *See* TEX. TRANSP. CODE ANN. § 258.004(a). We conclude that summary judgment was not proper on this ground.

Because none of the grounds raised by the County in its motion were meritorious, the trial court erred in granting summary judgment. McGraw's second issue is sustained.

## E.     Takings Claim

McGraw contends by his third issue that the trial court's ruling unconstitutionally "depriv[ed it] of its property without compensation." *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 17.[19]   In light of our conclusion that summary judgment in favor of the County was error, we need not address the issue. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
7th day of May, 2015.

---

[19] This claim was not raised in any pleading. In its reply brief, McGraw states: "Appellant raises this point not to assert a new claim, but to highlight the incongruity of Appellee's position in this case."

24