**Opinion filed September 18, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00060-CV

_____

### JONATHAN HOBSON, JR., Appellant

### V.

### COMMISSIONERS COURT OF PALO PINTO COUNTY, TEXAS; COUNTY JUDGE SHANE LONG; COMMISSIONER GARY GLOVER; COMMISSIONER MIKE REED; COMMISSIONER MIKE PIERCE; COMMISSIONER JEFF FRYER; ALFRED EZELL; AND KIM EZELL, Appellees

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. C50323**

### M E M O R A N D U M   O P I N I O N

This is the next chapter in the ongoing dispute between neighboring landowners, Appellant, Jonathan Hobson, Jr., and Appellees, Alfred Ezell and Kim Ezell (the Ezells), over Hobson's use of a certain road (the Road) to access his

landlocked property (the Hobson Tract); the Road traverses the Ezells' property (the Ezell Tract).[1] Adding to the parties' dissension is the denial of Hobson's application for a neighborhood road by Appellees, the Commissioners Court of Palo Pinto County, Shane Long, Gary Glover, Mike Reed, Mike Pierce, and Jeff Fryer (collectively, the Commissioners).

After his application was denied, Hobson filed suit alleging that Palo Pinto County had abandoned and failed to maintain the Road as a public road, and the Commissioners had abused their discretion by denying his application. Hobson also sued the Ezells for declaratory relief under the Uniform Declaratory Judgments Act (UDJA) and permanent injunctive relief. Hobson and the Ezells filed cross-motions for summary judgment. The trial court ultimately granted the Ezells' motion, denied Hobson's motion, denied all claims that Hobson had asserted against the Commissioners, and awarded attorney's fees and costs to the Ezells under the UDJA. *See* TEX. CIV. PRAC. & REM. CODE § 37.009 (West 2020).

On appeal, Hobson challenges the trial court's rulings in four issues. In his first issue, Hobson argues that the trial court erred when it denied his motion for summary judgment. In his second and third issues, Hobson argues that the trial court erred when it granted the Ezells' motion for partial summary judgment and denied the claims he asserted against the Commissioners. In his fourth issue, Hobson argues that the trial court abused its discretion when it awarded attorney's fees to the Ezells under the UDJA without requiring segregation. *See id.* We affirm.

---

[1]This is the second lawsuit between Hobson and the Ezells concerning his use of the Road to access the Hobson Tract. *See Hobson v. Francis*, No. 02-18-00180-CV, 2019 WL 2635562, at *2 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.).

### I. *Factual Background*

The aerial photograph reproduced below illustrates the spatial relationship of the Hobson Tract, the Ezell Tract, and the Road; the image depicts the Hobson Tract as Tract 1, the Ezell Tract as Tract 3, and the Road as a thick red line that runs east-west along the southern boundary of Tract 3. In addition, U.S. Highway 281 is depicted as an orange line running north-south along the western boundary of the Ezell Tract, and the county line between Palo Pinto County and Parker County is a thin red line that runs north-south through the Ezell Tract. The Road crosses the county line and connects the Hobson Tract to U.S. Highway 281. While the Hobson Tract is located exclusively within the extraterritorial boundaries of Parker County, approximately 60% to 70% of the Road is situated in Palo Pinto County.



In 1978, Hobson's parents purchased the Hobson Tract. In 1999, Hobson's family purchased the Southerland Tract, which is depicted as Tract 4 in the above photograph. Following the purchase of the Southerland Tract, the Ezells' predecessor-in-title "pulled the culverts" from the Road and barred the Hobson

family from using the Road to access their property. In 2003, Hobson's parents divorced; in the parties' property division incident to divorce, Hobson's father was awarded the Hobson Tract, and Hobson's mother was awarded the Southerland Tract. This allowed Hobson's father to use a "southern easement" on the Southerland Tract to access his property. Hobson alleges that, around this time, his father used approximately ten percent of the eastern portion of the Road to access the Hobson Tract through the "southern easement."

In 2006, the Ezells acquired title to the Ezell Tract. After the Ezells took possession of it, Hobson alleges that they also "blocked and refused to allow [him] to access the Road." In 2009, Hobson's mother sold the Southerland Tract to Hobson's sister, who in turn allowed Hobson's father to continue using the "southern easement" to access the Hobson Tract. Hobson inherited the Hobson Tract from his father in 2013, and shortly thereafter, his sister sold the Southerland Tract. Hobson later obtained title to the Hobson Tract.

On January 12, 2017, Hobson filed suit against the Ezells (as well as other defendants who are not parties to the Palo Pinto County suit) in Parker County to establish an easement by prescription across a portion of the Ezell Tract that is in the same location as the Road. The Ezells later filed a traditional motion for summary judgment, which the Parker County trial court granted on October 13, 2017. Hobson appealed the trial court's judgment to the Second Court of Appeals; however, Hobson did not challenge the trial court's grant of summary judgment in favor of the Ezells. *See Hobson*, 2019 WL 2635562, at \*2 n.4.

In 2021, Hobson filed an application for a neighborhood road with the Commissioners.[2] In his application, Hobson claimed that the Road was a public road that had been abandoned by Palo Pinto County, and he requested that: (1) the Commissioners "reopen" the Road and declare it to be a public road in Palo Pinto County; or, (2) alternatively, if the Commissioners determined that the Road was a private road, the Commissioners should then establish a neighborhood road in the same location. *See* TRANSP. §§ 251.003(a) (West 2013) (authority over construction and maintenance of public roads), .004(a) (commissioners' court as road supervisors), .016 (general county authority over roads). After a public hearing, the Commissioners denied Hobson's application.

On March 31, 2022, Hobson filed the underlying suit in Palo Pinto County.[3] In his pleadings, Hobson asserted two claims against the Commissioners. First, Hobson alleged that the Commissioners had abandoned and failed to maintain the Road as a public road, and he sought an order from the trial court requiring that the Commissioners: (1) acknowledge the Road as a public road in its official records; (2) enforce Hobson's and the public's access to the Road; and (3) "either return to maintaining [the Road] or formally abandon [the Road]." Second, Hobson alleged that the Commissioners abused their discretion by denying his alternative request for relief in his application—to establish a neighborhood road. *See id.* §§ 251.008(1) (requirement for county roads to be clear of all obstructions), .053 (application for a

---

[2]Prior to filing his application in Palo Pinto County, Hobson filed two applications for a neighborhood road with the Parker County Commissioners' Court, in 2019 and 2020, respectively. *See* TEX. TRANSP. CODE ANN. § 251.053 (West 2013). The Parker County Commissioners' Court denied Hobson's applications. However, after a second hearing in 2021, the county attorney for Parker County allegedly told Hobson that the Parker County Commissioners' Court would reconsider his application for a public or neighborhood road if he sought relief from Palo Pinto County on the issue of whether the Road was a public road.

[3]Hobson later amended his petition on May 1, 2023.

neighborhood road). In addition to his claims against the Commissioners, Hobson sued the Ezells for a declaratory judgment and permanent injunctive relief to restrain the Ezells from obstructing his access to the Hobson Tract by using the Road.[4]

The Ezells filed an answer, which they later amended, and asserted multiple affirmative defenses based on res judicata, laches, limitations, lack of jurisdiction, and the "redundant remedies doctrine." On September 1, 2023, the Ezells filed a motion for partial summary judgment (the Ezell motion).

On September 6, Hobson filed his traditional motion for summary judgment (the Hobson motion), seeking judgment on the same grounds as alleged in his pleadings. The trial court conducted a hearing on the parties' motions, and on November 28, it signed two orders, one that denied Hobson's motion and one that granted the Ezells' motion.

Hobson filed a motion to reconsider and for clarification. The trial court conducted a hearing on Hobson's motion to reconsider, and on January 2, 2024, it signed an amended order that clarified its earlier ruling, denied "all of Hobson's claims against all [d]efendants," and stated that it would consider the Ezells' claim for attorney's fees by submission. Subsequently, the Ezells submitted a request for attorney's fees and expenses in the amount of $62,478.15, which the trial court awarded to them. Pursuant to Hobson's request, the trial court timely prepared and signed findings of fact and conclusions of law regarding its order awarding attorney's fees to the Ezells. This appeal followed.

---

[4]Hobson sought seven declarations from the trial court, namely that: (1) the Road "has been the subject of long and continued use by the public going back many decades . . . and the ownership of the land at the time that the Public Road originated remains shrouded in obscurity"; (2) the Road is a public road impliedly dedicated by presumptive donative intent; (3) the Road has not been abandoned by the Commissioners; (4) he maintains a right and interest in the use of the Road; (5) his right to use the Road is superior to (or at most equal to) the Ezells; (6) the Ezells are wrongfully interfering with his use of the Road; and (7) the Ezells have no right to block or interfere with his use of the Road.

## II. *Standards of Review and Applicable Law*

### A. *Cross-Motions for Summary Judgment*

Ordinarily, an order that denies a request for summary judgment is not final and appealable; such a denial means that a fact issue exists, or the movant has not carried its burden to prove the required elements as a matter of law. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). However, when competing motions for summary judgment are filed and the trial court grants one motion and denies the other, the denial is reviewable as part of the appeal from the granted motion. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Rustic Nat. Res. LLC v. DE Midland III LLC*, 669 S.W.3d 494, 504–05 (Tex. App.— Eastland 2022, pet. denied). Further, and in this circumstance, the parties each must have moved for summary judgment "on the same issues." *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 611 (Tex. 2012). In a summary judgment context, the term "issues" refers to the grounds asserted by the nonmovant to defeat the movant's entitlement to summary judgment. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 n.2 (Tex. 1993); *Rustic*, 669 S.W.3d at 505. Thus, because Hobson and the Ezells both moved for summary judgment on the same issues in the underlying suit, we will also review the trial court's denial of Hobson's motion. *See Fed. Deposit Ins. Corp.*, 361 S.W.3d at 611–12 (citing *Valence Operating Co.*, 164 S.W.3d at 661); *Rustic*, 669 S.W.3d at 505.

We review a trial court's grant or denial of summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021); *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 837 (Tex. 2018). To prevail under the traditional summary judgment standard, the movant has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858,

7

865 (Tex. 2018); *Haynes v. DOH Oil Co.*, 647 S.W.3d 793, 798 (Tex. App.—Eastland 2022, no pet.).

A defendant who moves for summary judgment relief based on a traditional motion must either conclusively negate at least one essential element of the cause of action being asserted by the plaintiff or conclusively establish each element of a defense or a properly pleaded affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Seager v. Fry*, 707 S.W.3d 452, 462 (Tex. App.—Eastland 2025, no pet.). If the movant meets its summary judgment burden, the burden then shifts to the nonmovant to present to the trial court any issues or evidence that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014); *Seager*, 707 S.W.3d at 462. However, when cross-motions for summary judgment are filed, each party bears the burden to establish that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). Thus, when the trial court grants one motion and denies the other, we must consider all the summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)); *City of Stephenville v. Belew*, 692 S.W.3d 347, 361 (Tex. App.—Eastland 2024, pet. denied).

In determining whether a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve all doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Solaris Oilfield Site Servs. Oper LLC v. Brown Cnty. Appraisal Dist.*, 688 S.W.3d 918, 924 (Tex.

App.—Eastland 2024, no pet.). We must credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A genuine issue of material fact is raised if reasonable and fair-minded jurors could differ in their conclusions considering all the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

In addition, although a party's pleadings generally do not qualify as competent summary judgment evidence, a court may nonetheless grant summary judgment based on deficiencies in an opposing party's pleadings, and a movant may rely on allegations in an opposing party's pleadings that constitute judicial admissions. *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 827–28 (Tex. 2022) (citing *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 818–20 (Tex. 2021)).

When, as in this case, the trial court's order does not specify the grounds upon which it granted summary judgment, "we must affirm the [grant of] summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (citing *Cates*, 927 S.W.2d at 626); *Tex. Petroleum Land Mgmt., LLC v. McMillan*, 641 S.W.3d 831, 840 (Tex. App.—Eastland 2022, no pet.). "[I]t is the appellant's burden on appeal to show that each of the independent grounds asserted in support of summary judgment is insufficient to support the judgment." *Humane Soc'y of Dallas v. Dallas Morning News, L.P.*, 180 S.W.3d 921, 923 (Tex. App.—Dallas 2005, no pet.). Further "[i]f summary judgment may have been rendered, properly or improperly, on a ground not challenged [on appeal], the

9

judgment must be affirmed." *Britton v. Tex. Dep't of Criminal Just.*, 95 S.W.3d 676, 682 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (quoting *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston, [1st Dist.] 2002, no pet.).

B. *Principles of Statutory Interpretation*

The trial court's interpretation of applicable statutes is a question of law that we review de novo. *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016); *Butler v. City of Big Spring*, 652 S.W.3d 149, 152 (Tex. App.—Eastland 2022, pet. denied). When construing a statute, our primary objective is to "ascertain and give effect to the Legislature's intent." *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 847 (Tex. 2024) (quoting *Odyssey 2020 Acad. Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021)); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

We begin by examining the plain meaning of the statute's language. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389–90 (Tex. 2014). We derive legislative intent from the statute as a whole and its plain language, rather than from isolated portions of it. *Odyssey*, 624 S.W.3d at 540; *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). That is, we read statutes contextually to give effect to every word, clause, and sentence because every word and phrase is presumed to have been used intentionally, with a meaning and a purpose. *Fort Worth Transp. Auth.*, 547 S.W.3d at 838; *Belew*, 692 S.W.3d at 362. "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011 (West 2013); *Cadena Commercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017); *see also Johnson*, 691 S.W.3d at 847 (Statutory terms that are not defined by the legislature "usually bear their common, ordinary meaning.").

10

"If [the language of] the statute is clear and unambiguous, we must read the language according to its [plain and] common meaning 'without resort to rules of construction or extrinsic aids.'" *Crosstex Energy Servs.*, 430 S.W.3d at 389 (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)); *Butler*, 652 S.W.3d at 152. In that regard, we will presume that the legislature intended for each of the statute's words to have a purpose. *Johnson*, 691 S.W.3d at 847. Further, if a statute is unambiguous, we adopt the interpretation that is supported by the statute's plain language unless such an interpretation would yield an absurd result. *TGS-NOPEC*, 340 S.W.3d at 439 (citing *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care*, 145 S.W.3d 170, 177 (Tex. 2004)). "A statute is ambiguous if its words are susceptible to two or more reasonable interpretations and we cannot discern legislative intent from the [statutory] language alone." *Fort Worth Transp. Auth.*, 547 S.W.3d at 838.

C. *Attorney's Fees*

In Texas, a party may not recover attorney's fees unless such recovery is authorized by contract or statute. *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006)). The UDJA generally "affords the trial court a measure of discretion in deciding whether to award attorney fees or not." *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). In this regard, a trial court "may award costs and reasonable attorney's fees as are equitable and just" in a declaratory judgment proceeding. *See* CIV. PRAC. & REM. § 37.009; *Seager*, 707 S.W.3d at 472 (citing *MEI Camp Springs, LLC v. Clear Fork, Inc.*, 623 S.W.3d 83, 88 (Tex. App.—Eastland 2021, no pet.)); *see also Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637–38 (Tex. 1996).

When analyzing the trial court's award of attorney's fees on appeal, we note that "the UDJA does not require an award of attorney's fees to anyone; rather, it 'entrusts attorney fee awards to the trial court's sound discretion.'" *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 271 (Tex. 2021) (quoting *Bocquet*, 972 S.W.2d at 21); *see Dipprey v. Double Diamond, Inc.*, 637 S.W.3d 784, 800 (Tex. App.—Eastland 2021, no pet.). A party may request attorney's fees under the UDJA in an action which seeks a declaration that a disputed roadway has been impliedly dedicated to the public. *See Shelton v. Kalbow*, 489 S.W.3d 32, 57 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Moreover, "[a] trial court may, in its discretion, award attorneys' fees to the nonprevailing party in a declaratory judgment action." *Hartsell v. Town of Talty*, 130 S.W.3d 325, 329 (Tex. App.—Dallas 2004, pet. denied).

We review a trial court's award of attorney's fees under the UDJA for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012); *see Seager*, 707 S.W.3d at 471. A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles in reaching its ruling, or if its ruling is not supported by legally or factually sufficient evidence. *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 482 (Tex. 2022) (citing *Bocquet*, 972 S.W.2d at 21). "The grant or denial of attorneys' fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing of abuse of discretion." *Hartsell*, 130 S.W.3d at 329. In conducting an abuse of discretion review, we view the evidence in the light most favorable to the trial court's ruling and we indulge every presumption in its favor. *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 444 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see Glass v. Frank Glass Family P'ship,*

12

*Ltd.*, No. 11-16-00047-CV, 2018 WL 4137625, at *5 (Tex. App.—Eastland Aug. 30, 2018, pet. denied) (mem. op.).

"When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). Whether the fees requested by a prevailing party are reasonable and necessary are questions of fact. *Id.* at 498. In this regard, the lodestar method sets forth a two-step standard for the factfinder to utilize so that it may ascertain what constitutes reasonable and necessary attorney's fees. *Id.*

First, the factfinder must determine the number of reasonable hours that counsel worked on the case; those hours are then multiplied by the reasonable hourly rate for counsel's services. *Id.*; *El Apple I*, 370 S.W.3d at 760. At a minimum, the fee claimant's proof of reasonable hours should include "evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos*, 578 S.W.3d at 498. This lodestar calculation approximates "the reasonable value of legal services provided" and, when supported by sufficient evidence, is presumed to indicate "the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id.* at 498–99.

Second, because other considerations may justify either an enhancement or a reduction to the lodestar figure, the factfinder must determine "whether evidence of those considerations overcomes the presumption and necessitates an adjustment to reach a reasonable fee." *Id.* at 501. This determination allows for the enhancement or the reduction of the lodestar figure "when considerations not already accounted for in the first step" establish that the lodestar figure represents either an

13

unreasonably low or an unreasonably high fee award. *Id.* at 502. "[C]onsiderations already incorporated into the base calculation may not be applied to rebut the presumption that the base calculation reflects reasonable and necessary attorney's fees." *Id.* at 501 (noting that *Arthur Andersen* lists the factors "that may justify an adjustment" provided they are noncumulative of the base-lodestar considerations) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

"General, conclusory testimony [that is] devoid of any real substance will not support a fee award." *Id.* Generalities about tasks that were performed provide insufficient information for the factfinder to meaningfully review whether the tasks performed by counsel and the hours incurred were reasonable and necessary. *El Apple I*, 370 S.W.3d at 764. While contemporaneous billing records are not required, there must be some evidence to inform the factfinder of the amount of time that counsel dedicated to specific tasks so that it may meaningfully review the amount of fees requested. *Rohrmoos*, 578 S.W.3d at 502; *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam).

The issue of fee segregation and whether the claims in dispute are so intertwined that they cannot be separated, is a mixed question of law and fact that we review de novo. *Chapa*, 212 S.W.3d at 312–14. The party seeking attorney's fees has the burden to prove that the requested fees have been properly segregated or that segregation is not required. *Sustainable Tex. Oyster Res. Mgmt., L.L.C. v. Hannah Reef, Inc.*, 623 S.W.3d 851, 872 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). A claimant seeking attorney's fees must segregate the fees that (1) are recoverable from those that are not, and (2) are owed by different parties. *See Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (citing *Chapa*, 212 S.W.3d at

14

314); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991). However, an exception to the duty to segregate exists "when the services for which the fees are incurred 'advance both a recoverable and unrecoverable claim,' such that the 'fees are so intertwined that they need not be segregated.'" *Transcor Astra Grp. S.A.*, 650 S.W.3d at 482 (quoting *Chapa*, 212 S.W.3d at 313–14); *see Kinsel*, 526 S.W.3d at 427.

### III. *Analysis*

While Hobson's brief raises multiple sub-issues regarding the trial court's rulings and judgment, he presents four issues for our review: (1) did the trial court err when it denied the Hobson motion; (2) did the trial court err when it granted the Ezell motion; (3) did the trial court err when it denied Hobson's claims against the Commissioners; and (4) did the trial court abuse its discretion when it awarded attorney's fees to the Ezells.

Because our resolution of the Ezell motion is dispositive of Hobson's second and third issues, we begin by addressing the summary judgment grounds raised in the Ezell motion.

The Ezells sought summary judgment on the claims that Hobson had asserted against the Commissioners *and* the Ezells. First, the Ezells contended that summary judgment should be granted in their favor because: (1) limitations barred Hobson's claims under Section 16.051 of the Civil Practice and Remedies Code; (2) res judicata barred Hobson's claims; (3) Hobson could not show a probable right of recovery to obtain permanent injunctive relief; and (4) there was no genuine issue of material fact that the Road was a private road, or, alternatively, that Palo Pinto County abandoned the Road as a public one. *See* CIV. PRAC. & REM. § 16.051 (West 2015) (the residual four-year limitations statute); TRANSP. § 251.057 (West Supp. 2024).

Second, the Ezell motion sought summary judgment for the Commissioners contending that: (1) limitations barred Hobson's claims under Section 16.005 of the Civil Practice and Remedies Code;[5] (2) the trial court lacked jurisdiction to grant the relief that Hobson requested—i.e., the trial court cannot order the Commissioners to establish either a public road or neighborhood road beyond the extraterritorial boundaries of Palo Pinto County; and (3) the Commissioner's did not abuse their discretion when they denied Hobson's application, including his request that the Road be declared a public road for the purposes of county maintenance. *See* CIV. PRAC. & REM. § 16.005 (West 2025).

In a summary judgment context, the appealing party must negate all possible grounds upon which the trial court's summary judgment order could have been based. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *see also FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (The reviewing court must affirm summary judgment if any summary judgment ground is meritorious.). It is not sufficient to merely raise an issue generally—the appellant must challenge each summary judgment ground with supporting arguments and authorities. *Ramirez v. First Liberty Ins. Corp.*, 458 S.W.3d 568, 572 (Tex. App.—El Paso 2014, no pet.) (citing *Rangel v. Progressive Cnty. Mut. Ins. Co.*, 333 S.W.3d 265, 269–70 (Tex. App.—El Paso 2010, pet. denied)). Thus, if the appellant fails to challenge each ground on which summary judgment could have been granted, we

---

[5]We note that both parties refer to Section 16.005 of the Civil Practice and Remedies Code as a statute of limitations; however, Section 16.005 is a statute of repose. *See Crockett Cnty. v. Klassen Energy, Inc.*, 463 S.W.3d 908, 912 (Tex. App.—El Paso 2015, no pet.); *Hanks v. Sabine Cnty.*, No. 06-10-00099-CV, 2011 WL 1260211, at *3 (Tex. App.—Texarkana Apr. 5, 2011, pet. denied) (mem. op.) (stating that the statute of repose runs from a specific date without regard to the accrual of a cause of action and operates as an affirmative defense which must be pled and proven by the defendant).

must uphold the trial court's grant of summary judgment on the unchallenged ground(s). *Star–Telegram*, 915 S.W.2d at 473; *Ramirez*, 458 S.W.3d at 572.

A. *Section 16.051 of the Civil Practice and Remedies Code*

In his second issue, Hobson argues that the trial court erred when it granted summary judgment in favor of the Ezells on his claims for declaratory and permanent injunctive relief based on the defense of the residual four-year statute of limitations. Specifically, Hobson argues that Section 16.051 is inapplicable to these claims because the residual limitations statute "do[es] not bar claims for interference with public roads." Additionally, Hobson contends that the Ezells were required to establish that the Road was not public property before the residual statute of limitations would apply to his suit. *See* CIV. PRAC. & REM. § 16.051. However, Hobson is incorrect as to each party's burden of proof regarding the affirmative defense of limitations.

A defendant that moves for summary judgment on the affirmative defense of limitations bears the burden to conclusively establish that defense. *See Gill v. Hill*, 688 S.W.3d 863, 868 (Tex. 2024), *cert. denied*, 145 S. Ct. 274 (2024); *see also* TEX. R. CIV. P. 94. To meet this burden, the defendant-movant must conclusively prove when the plaintiff's cause of action accrued and, if the discovery rule has been pleaded or otherwise raised, conclusively negate the application of the discovery rule and any tolling doctrines that have been pled as an exception to limitations. *Gill*, 688 S.W.3d at 868. A defendant-movant negates the discovery rule's application by proving as a matter of law that there is no genuine issue of material fact regarding when the plaintiff-nonmovant discovered or, in the exercise of reasonable diligence, should have discovered his injury. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

17

Conversely, a plaintiff-nonmovant bears the burden to raise a fact issue to support his assertion that the statute of limitations cannot bar his suit even if the limitations period has expired, as Hobson argues here. *See Gill*, 688 S.W.3d at 868. Thus, once the Ezells presented sufficient evidence to show that Hobson's claims were barred by limitations based on the date of his claimed injury, the burden shifted to Hobson to raise a fact issue that his claims were not barred by the expiration of the four-year residual limitations period. *Id.*

### 1. *The Ezells' Burden*

The question of when a plaintiff's cause of action accrues is a question of law. *Knott*, 128 S.W.3d at 221. Generally, a cause of action accrues when facts come into existence that authorize one to seek a judicial remedy, when a wrongful act causes a legal injury, or whenever one person may sue another. *Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015).

In their motion, the Ezells contended that Hobson's requests for declaratory and permanent injunctive relief are barred by Section 16.051, which states that "[e]very action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."[6] CIV. PRAC. & REM. § 16.051; *see Futrell v. Lopez*, No. 04-02-00894-CV, 2003 WL 21269591, at *2 (Tex. App.—San Antonio June 4, 2003, no pet.) (mem. op.) (discussing the applicability of a four-year limitations period to an injury caused by a locked gate that obstructed access to a public road) (citing *Lubbock Cnty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585

---

[6]Neither party contends that Hobson's claim for injunctive relief was an action for the recovery of real property.

(Tex. 2002)).  In his response, Hobson primarily argues that the residual limitations statute cannot bar his suit even if that limitations period has expired.

As the party seeking summary judgment based on the affirmative defense of limitations, the Ezells had the burden to prove as a matter of law that no genuine issue of material fact existed as to when Hobson discovered or should have discovered the nature of his claimed legal injury.  *See B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 48 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *KPMG Peat Marwick*, 988 S.W.2d at 748).  To this point, the Ezells argue that Section 16.051 bars Hobson's claims because: (1) Hobson filed this suit more than four years after he filed the Parker County lawsuit in 2017 in which he sought the same or similar relief; (2) for purposes of limitations, Hobson was aware of his alleged legal injury no later than 2017 because it had accrued prior to him filing suit in Parker County; and (3) the claims in both cases encompass the same underlying facts and legal injury—that the Ezells blocked and interfered with Hobson's access to the Road.[7]  *See* CIV. PRAC. & REM. § 16.051.  We agree with the Ezells.

Here, the Ezells cited to allegations in Hobson's pleadings in support of their contention that the accrual date for his claims was between 2006 and 2013.  *See Paniagua*, 646 S.W.3d at 827–28 (holding that judicial admissions in an opposing party's pleadings may be competent summary judgment evidence to support the affirmative defense of limitations).  According to Hobson's pleadings, he inherited the Hobson Tract in 2013, and he acquired title to that property.  Moreover, in Hobson's original petition in the Parker County suit, he alleged that the previous owner of the Ezell Tract "fenced the road out" and "pulled out the culverts" on the

---

[7]Hobson filed his suit in Parker County against the Ezells on January 12, 2017.

Road prior to the time that the Ezells had acquired the tract. This conduct then caused Hobson to seek alternative easements to access the Hobson Tract.

Further, Hobson acknowledged that the Ezells continued to block his access to the Hobson Tract by using a gate on the Road after they acquired possession of the Ezell Tract. In his Parker County pleadings and answers to interrogatories, Hobson also alleged that he used a portion of the Road to access his property from sometime in 2003 until sometime in 2015. Moreover, the allegations in Hobson's Parker County pleadings are corroborated by his sworn applications for a neighborhood road that he filed in Parker County in 2019 and 2020, and in Palo Pinto County in 2022.

The evidence conclusively shows that Hobson failed to file the underlying suit within four years from the date he discovered that an alleged actionable legal injury could be asserted. Therefore, we conclude that Hobson was aware of his complained-of injury at the time he first filed suit in Parker County in 2017, if not sooner. Thus, because Hobson's claims for declaratory and injunctive relief were asserted more than four years after the accrual of those causes of action, the Ezells met their evidentiary burden to show that these claims are barred by the residual statute of limitations. *See* CIV. PRAC. & REM. § 16.051; *Knott*, 128 S.W.3d at 221. As such, the burden shifted to Hobson to raise a fact issue that his claims are not barred by the expiration of this limitations period, as he suggests. *See Gill*, 688 S.W.3d at 868.

### 2. *Hobson's Burden*

In his response to the Ezell motion, Hobson argued that he was not seeking damages for an injury that occurred in the past; rather, he contended that his claim for permanent injunctive relief constitutes a continuing tort, which negated the accrual date of his injury under the residual statute of limitations. A cause of action

20

for a continuing tort accrues when the tortious conduct ceases. *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied) (citing *Tectonic Realty Inv. Co. v. CNA Lloyd's of Tex. Ins. Co.*, 812 S.W.2d 647, 654 (Tex. App.—Dallas 1991, writ denied)). "The doctrine of continuing tort, with its extension of [the] accrual date, is rooted in a plaintiff's inability to know that the ongoing conduct is causing him injury." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017).

We note that the Texas Supreme Court has "neither endorsed nor addressed" the continuing-tort doctrine. *See Regency Field Services, LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 817 (Tex. 2021) (quoting *Rincones*, 520 S.W.3d at 592). If a plaintiff discovers his injury and its cause, the rationale for the continuing-tort doctrine no longer applies, and the statute of limitations commences at that point. *Upjohn*, 885 S.W.2d at 544 (citing *Atha v. Polsky*, 667 S.W.2d 307, 310 n.10 (Tex. App.—Austin 1984, writ ref'd n.r.e.)); *Beltway Park Baptist Church, Inc. v. Bolton*, No. 11-18-00049-CV, 2020 WL 868069, at *6 (Tex. App.—Eastland Feb. 21, 2020, no pet.) (mem. op.). Further, and as noted in *Rincones*, "[w]e follow our rule that 'a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy' and the 'fact that damage may continue to occur for an extended period after accrual does not prevent limitations from starting to run.'" 520 S.W.3d at 593 (quoting *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990)). Nevertheless, until such time as the supreme court has expressly addressed this doctrine and its application, we decline to apply the continuing-tort doctrine to the circumstances before us.

Hobson relies on Section 16.061 of the Civil Practice and Remedies Code to support his argument that his claims against the Ezells are not barred by limitations because title to public property cannot be taken from the state through adverse

possession.  CIV. PRAC. & REM § 16.061(a) (West 2015) ("[a] right of action of this state or a political subdivision of the state . . . is not barred by [Section 16.051]"). However, Section 16.061 is inapplicable to Hobson's claims because, while the legislature has expressly exempted counties and other entities from its application, this exemption does not apply to private individuals like Hobson.  *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 938–40 (Tex. 1993) (discussing the statutory amendment history of Section 16.061 and applying the ordinary meaning to the term "state" as it is used in the statute); *Weaver v. City of Sunset Valley*, 535 S.W.2d 12, 14 (Tex. App.—Austin 1976, no writ) (addressing the applicability of Article 5517—the predecessor statute to Section 16.061—to an action seeking to acquire title by limitation to a public street) ("[W]e have not discovered in this body of case law any holding that would extend to private individuals the same exemption from the statutes of limitations that Article 5517 extends to municipalities, regardless of what right the individual sought to enforce."); *see generally Johnson v. City of Ft. Worth*, 774 S.W.2d 653, 655 (Tex. 1989) (stating that Section 16.061 was intended as a non-substantive revision of Article 5517).

Hobson also cites to several cases to support his contention, each of which is distinguishable.  *See Adams v. Rowles*, 228 S.W.2d 849, 851 (Tex. 1950) (a trespass to try title to land suit filed by an individual against Pecos County concerning the sale of lots which included a public dedication of a road by reference to a recorded plat); *Richardson v. Lone Star Salt Co.*, 49 S.W. 647, 648 (Tex. 1899); *Cowan v. Worrell*, 638 S.W.3d 244, 264 (Tex. App.—Eastland 2022, no pet.) (stating that the statute of limitations for adverse possession does not apply *to the State* when an action seeks to acquire public land owned by the State, such as an action for adverse possession of title for real property) (citing CIV. PRAC. & REM. § 16.061(a));

*Texas & P. Ry. Co. v. Reese*, 163 S.W.2d 249, 249–51 (Tex. App.—Texarkana 1942, no writ) (holding that a private entity could not use adverse possession to acquire title to land because the title included an express dedication of the streets and alleys to public use); *Eidelbach v. Davis*, 99 S.W.2d 1067, 1073 (Tex. App.—Beaumont 1936, writ dism'd) (holding that intervening petitioners who purchased lots by reference to a recorded plat that dedicated a street and parkway to the public were entitled to enjoin the erection of a store in the parkway in violation of their private rights to the public land because the store was erected less than four years prior to filing suit, but the petitioners were not entitled to abate or remove obstructions caused by the erection of camp houses after four years had passed); *City of Dallas v. Early*, 281 S.W. 883, 885 (Tex. App.—Dallas 1926, writ dism'd) (discussing the abatement of a nuisance caused by the overflow of a city drainage system); *Spencer v. Levy*, 173 S.W. 550, 557 (Tex. App.—Austin 1914, writ ref'd) (discussing an attempt to acquire title by limitation to a portion of a public street).

We do not disagree with the general propositions of law espoused in each of the cases cited above by Hobson; however, none address the issue that is before us: whether an *individual* landowner may avail himself of the limitations exemption in Section 16.061(a). Nor has Hobson cited or directed us to any authority that addresses the applicability of Section 16.061(a) to either an action for declaratory judgment or for permanent injunctive relief against a neighboring landowner based on the disputed status of a public road. *See Weaver*, 535 S.W.2d at 14.

We conclude that Hobson failed to meet his burden to establish that his claims are not barred by the expiration of the four-year residual limitations period. *See* Civ. Prac. & Rem. § 16.051; *Gill*, 688 S.W.3d at 868. As such, the trial court did not err

when it granted the Ezell motion based on limitations and denied the Hobson motion on the same basis.[8]

Accordingly, we overrule Hobson's second issue.

B. *Section 16.005 of the Civil Practice and Remedies Code*

Within his third issue, Hobson asserts that Section 16.005 of the Civil Practice and Remedies Code is inapplicable to his claims against the Commissioners for their alleged abandonment and failure to maintain a public road because: (1) he does not challenge any order passed by the Commissioners that closed the Road; and (2) the record does not include a formal order or ordinance enacted by the Commissioners to close or abandon the Road. *See* CIV. PRAC. & REM. § 16.005; *see also Kennedy Con., Inc. v. Forman*, 502 S.W.3d 486, 501 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

In their motion, the Ezells argued that Hobson's claims against the Commissioners are barred by Section 16.005, which is titled "Action for Closing Street or Road," because his suit was filed more than two years after either: (1) the date that the Road was first "closed" in 1999; (2) the date he inherited the Hobson Tract from his father in 2013; or (3) the date he filed suit in Parker County in 2017 to obtain access to his property. *See* CIV. PRAC. & REM. § 16.005.

The plain language of Section 16.005 states that suit must be filed no later than two years after a cause of action accrues "[for] *the adoption* by a commissioners court *of an order closing and abandoning, or attempting to close and abandon*, all or any part of a public road or thoroughfare in the county, other than a state highway." *Id.* § 16.005(a)(2) (emphasis added). Thus, the two-year statute of repose

---

[8]Because of our disposition of Hobson's issue on this point, it is not necessary to address the applicability of the other affirmative defenses raised by the Ezells in their motion—although some, such as res judicata, may also support the trial court's judgment—or the corresponding arguments raised by Hobson in his brief. *See* TEX. R. APP. P. 47.1.

in Section 16.005 commences on the date of the passage or adoption by a commissioners court of (1) a procedurally valid order to close and abandon all or any part of a public road, or (2) any order that attempts to do the same. *See id.*; *Crockett Cnty.*, 463 S.W.3d at 913.

Here, there is no evidence that the Commissioners ever passed, or attempted to pass an order to close and abandon all or any part of the Road. Consequently, there is no date upon which a claim under Section 16.005 could have accrued. As such, because the Ezells failed to meet their evidentiary burden to support a grant of summary judgment based on their affirmative defense under Section 16.005 for Hobson's remaining claims against the Commissioners, we agree with Hobson that Section 16.005 would not bar his claims. *See* CIV. PRAC. & REM. § 16.005; *Crosstex Energy Servs.*, 430 S.W.3d at 389–90; *see also Kennedy Con., Inc.*, 502 S.W.3d at 501 (discussing the application of Section 16.005(a)(1) to a trespass-to-try-title action for ownership of a right-of-way). However, this determination does not require that we reverse the trial court's judgment.

C. *Lack of Jurisdiction*

Hobson also argues in his third issue that the trial court erred when it denied his claims against the Commissioners because the Ezells' motion failed to establish that the trial court lacked jurisdiction to do so.[9] Hobson argues that the trial court had jurisdiction over the claims that he asserted against the Commissioners because: (1) the Commissioners had the jurisdiction and authority to determine the public status of the Road pursuant to their general powers; and (2) the trial court could in

---

[9]Neither party disputes that the trial court had jurisdiction to hear and decide Hobson's declaratory judgment claims under the UDJA, which he solely asserted against the Ezells. *See Haven Chapel United Methodist Church v. Leebron*, 496 S.W.3d 893, 901 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Wise Cnty. v. Mastropiero*, No. 02-18-00378-CV, 2019 WL 3755766, at *7 (Tex. App.—Fort Worth Aug. 8, 2019, no pet.) (mem. op.).

25

turn review the Commissioners' denial of his application, and enter an order for his requested relief, because district courts may exercise supervisory control over commissioners' courts.[10] *See* TRANSP. §§ 251.003(a) (construction and maintenance of public roads), .004(a) (commissioners as road supervisors), .008(1) (general requirements for county roads to be clear of obstructions), .016 (general county authority over roads); GOV'T § 24.020 (West 2023) (a district court's jurisdiction over a commissioners' court); *Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017); Henry v. Sullivan, 499 S.W.3d 545, 553 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (op. on reh'g). For the reasons stated below, we conclude that the trial court lacked jurisdiction to grant Hobson's requested relief for his claims against the Commissioners.

Before a court may hear and decide a case, it is essential that the court possess subject-matter jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). To invoke the subject-matter jurisdiction of a court, the claimant must allege facts that affirmatively demonstrate that the court has jurisdiction to hear and decide the case. *Miranda*, 133 S.W.3d at 226; *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Subject-matter jurisdiction is a question of law that we review de novo. *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 664 (Tex. 2019).

---

[10]Additionally, Hobson argues that the Commissioners had the jurisdiction to create a neighborhood road outside the extraterritorial boundaries of Palo Pinto County in accordance with an interlocal agreement that existed between counties. *See* TEX. CONST. art. III, § 64(b); GOV'T § 791.001–.037 (authorizing local governments to contract with one another and with agencies of the state); TRANSP. § 251.059 (mutual agreement between commissioners courts for the costs of maintenance of a road). However, despite his bare assertion that the Commissioners had the authority to enter into an agreement for the maintenance of a road, Hobson provides no evidence of any such agreement between Parker and Palo Pinto Counties that would permit the extension of their jurisdictions beyond their respective county boundaries, nor does he provide any authority in support of this argument.

At the outset, we note that neither the Ezells nor the Commissioners filed a plea to the jurisdiction; nevertheless, matters concerning subject-matter jurisdiction may be raised in a motion for summary judgment or for the first time on appeal. *See Blue*, 34 S.W.3d at 554; *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 704 (Tex. App.—Eastland 2019, pet. denied). In this case, the Ezells challenged the trial court's subject-matter jurisdiction through their traditional motion for partial summary judgment.

The Ezells' jurisdictional argument is two-fold. First, they argue that Hobson's requested relief to order the Commissioners to "acknowledge the public nature" of the Road and "enforce access to" the Road is not a viable claim because the Commissioners do not have the constitutional or statutory authority to declare that a road is a public road. Second, they contend that the Commissioners lacked the authority to grant Hobson's application because: (1) a portion of the Road is not located in Palo Pinto County and the Hobson Tract is located solely in Parker County; and (2) a district court has no authority to direct a commissioners' court to perform a discretionary act. *See* TRANSP. § 251.016. Thus, the Ezells contend that the trial court lacked jurisdiction to grant the relief that Hobson requested.

### 1. *The Authority of the Commissioners*

The Texas constitution established a commissioners' court as a county's principal governing body; it may exercise legislative, executive, administrative, and judicial functions. *See* TEX. CONST. art. V, § 18; *Cox*, 520 S.W.3d at 36 (citing *Ector Cnty. v. Stringer*, 843 S.W.2d 477, 478 (Tex. 1992)). Additionally, a commissioners' court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." TEX. CONST. art. V, § 18(b). Commissioners' courts have the power to design, open, discontinue, or alter any public road. *Smith Cnty. v.*

27

*Thornton*, 726 S.W.2d 2, 3 (Tex. 1986) (citing *Morris v. Cassidy*, 15 S.W. 102, 103 (Tex. 1890); *Robison v. Whaley Farm Corp.*, 37 S.W.2d 714, 715 (Tex. 1931)); *Cowan*, 638 S.W.3d at 255. However, as we have said, the power of a commissioners' court over public roads is not absolute; rather, "any authority that a county has to declare that a road is a public road must be based on the Texas Constitution and [applicable] statutes." *Louisiana-Pac. Corp. v. Newton Cnty.*, 149 S.W.3d 262, 263–64 (Tex. App.—Eastland 2004, no pet.) (citing *Guynes v. Galveston Cnty.*, 861 S.W.2d 861, 863 (Tex. 1993)); *see also Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948); *Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941); *White v. Eastland Cnty.*, 12 S.W.3d 97, 100 (Tex. App.—Eastland 1999, no pet.).

The Ezells emphasize that we previously addressed the scope of authority granted to a county commissioners' court to use its implied powers to declare that a road is a public road in *Newton County*. *See Newton Cnty.*, 149 S.W.3d at 263–64 ("Commissioners courts may exercise broad discretion through implied powers in conducting county business."). In *Newton County*, we considered whether the Newton County Commissioners' Court had the jurisdiction and authority to establish a public road based on a request filed by a group of the county's residents. *Id.* The commissioners' court declared that the road at issue had been used by the public for more than fifty years and had become a public road by prescription, and it adopted an order to that effect. *See id.* We concluded that no constitutional provision or statute expressly authorizes a county to declare that a road is a public road, and that counties do not have the statutory authority to construct and maintain private roads. *See id.* at 264; Tex. Att'y Gen. Op. No. JM-334 (1985). Moreover, we noted that "[i]f a commissioners court spends money on a road without knowing whether the

28

road is a public road or a private road, it risks violating the prohibition against county maintenance of private roads." *Newton Cnty.*, 149 S.W.3d at 264.

However, circumstances may arise where a commissioners' court may desire to maintain a road that has not been officially established as a public road but has nonetheless been accessible to and regularly used by the public. *Newton Cnty.*, 149 S.W.3d at 264; *see generally Matthews v. Colorado Cnty.*, No. 01-16-00092-CV, 2016 WL 4033391, at *2–6 (Tex. App.—Houston [1st Dist.] July 26, 2016, pet. denied) (mem. op.) (citing TRANSP. §§ 258.002.–.007) (discussing the procedure to allow a county to preserve the existence of a public interest in a road under Chapter 258 of the Transportation Code). In these instances, a commissioners' court may exercise their implied authority to administratively determine the public status of a road for the purpose of permitting county action with respect to the road, such as spending public funds for the maintenance or improvement of a public road. *Newton Cnty.*, 149 S.W.3d at 263–64 (citing *City of Boerne*, 111 S.W.3d at 28); *see Canales*, 214 S.W.2d at 453; *see also* TRANSP. §§ 251.001–257.026. However, in further explaining the limited scope of authority that a commissioners' court possesses to determine whether a road has become a public road, we cited to a Texas attorney general's opinion which states that:

> [An administrative] determination would not, however, finally resolve the rights of private parties with respect to the road. *See* Tex. Att'y Gen. Op. No. M-534 (1969). Private landowners and others affected by a commissioners court's determination that a road is a public road may seek to have their rights adjudicated by a court.

Tex. Att'y Gen. Op. No. JC-0503 (2002). Thus, a county's administrative determination of a road's status serves only as a foundation upon which the commissioners' court may base its action or inaction. *Newton Cnty.*, 149 S.W.3d at

29

264; *see* Tex. Att'y Gen. Op. No. M–534 (1969). Ultimately, we concluded that the Newton County commissioners' court did not have the constitutional or statutory authority, and thus lacked the jurisdiction, to adopt an order declaring that the road at issue was a public road because its order was adopted solely in response to the citizens' request, and not as a foundation to support an authorized county action. *Newton Cnty.*, 149 S.W.3d at 264–65. Therefore, its order was void. *Id.* at 265.

While the facts of the case before us are distinguishable from *Newton County*, the underlying legal principles to be derived from it are instructive. In his application to the Commissioners, Hobson requested that the Commissioners: (1) investigate and issue a finding as to the history and status of the Road; (2) evaluate the necessity and logistics of obtaining an interlocal agreement; (3) make a finding and determination that Hobson does not have access to his home; and (4) enter an order declaring that the Road is a public road and that any adjacent property owners must cease interfering with the public's use of the Road. However, any administrative determination as to the status of a road by the commissioners can only be used as the foundation for commissioners' court's action or inaction, and their determination does not resolve the rights of private parties. *Newton Cnty.*, 149 S.W.3d at 264. Instead, the proper vehicle for determining an individual's right to use a public road, and to change its character, is through adjudication in a suit under the UDJA. *See Rutledge v. Staner*, 9 S.W.3d 469, 473 (Tex. App.—Tyler 1999, pet. denied) (citing *Lindner v. Hill*, 691 S.W.2d 590–91 (Tex. 1985); *Steel v. Wheeler*, 993 S.W.2d 376, 381 (Tex. App.—Tyler 1999, writ denied)). As such, we conclude that the Commissioners lacked the jurisdiction and authority to determine whether the Road was a public road based on the relief sought in Hobson's application. *See Newton Cnty.*, 149 S.W.3d at 263–64.

Furthermore, the Ezells contend that the Commissioners lacked the jurisdiction and authority to establish a public or neighborhood road—as requested by Hobson in his petition—because a portion of the Road is situated in Parker County. *See* TRANSP. § 251.016 ("The commissioners court of a county may exercise general control over all roads, highways, and bridges *in [its] county*.") (emphasis added); *City of Boerne*, 111 S.W.3d at 30 (discussing the general authority of commissioners' courts and remanding the issue of extraterritorial boundaries and jurisdiction for annexing property to the trial court). Although Hobson concedes that the Commissioners' authority over roads is limited to those which are only situated in Palo Pinto County, he does not identify any authority, nor have we found any, to refute the Ezells assertion that the Commissioners lacked the jurisdiction and authority to create a neighborhood road in the same location as the Road, as requested in his application. *See* TRANSP. § 251.016.

Instead, Hobson alternatively argues that the Commissioners had the authority to execute an interlocal agreement with Parker County to establish a neighborhood road. *See* TRANSP. § 251.059 (authorizing agreements between commissioner courts for costs and maintenance of a public road that is situated in more than one county); GOV'T § 791.001–.038 (authorizing local governments to contract with one another). However, Hobson's application to the Commissioners does not contain any acknowledgement or other writing from Parker County that shows that the Commissioners intended or were authorized to create a public or neighborhood road beyond the extraterritorial boundaries of Palo Pinto County pursuant to an "interlocal agreement." Nevertheless, we need not decide whether the Commissioners had the authority to grant Hobson's requested relief because, as we explain below, the trial court lacked the jurisdiction to order the Commissioners to create a neighborhood road. *See Cox*, 520 S.W.3d at 37.

### 2. *The Jurisdiction of a District Court*

Under the Texas constitution, a district court has "appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law." TEX. CONST. art. V, § 8. The enabling legislation incorporates this constitutional provision. GOV'T § 24.020; *Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997); *Grant v. Comm'rs Court of Navarro Cnty.*, No. 11-10-00309-CV, 2012 WL 1259295, at *2 (Tex. App.—Eastland Apr. 12, 2012, no pet.) (mem. op.). Here, in his original petition, Hobson alleged that the district court in Palo Pinto County had the jurisdiction over the Commissioners under Article V, Section 8 of the Texas constitution to order the performance of a ministerial or nondiscretionary statutory duty.

The legislature has not specified how such jurisdiction may be exercised or invoked by a district court; therefore, "the scope of [a] district court's supervisory jurisdiction generally has been defined by case law." *Sullivan*, 499 S.W.3d at 551; *see also Agan*, 940 S.W.2d at 80. In this regard, a party may only invoke a district court's constitutional supervisory control over a commissioners' court's judgment when that body acts beyond its jurisdiction or clearly abuses its discretion. *Agan*, 940 S.W.2d at 80; *Hobbs v. Gattis*, No. 01-19-00025-CV, 2020 WL 6065439, at *5 (Tex. App.—Houston [1st Dist.] Oct. 15, 2020, no pet.) (mem. op.). When reviewing the reasonableness of a commissioner's court's order or decision, we afford the same deference and respect that is shown to all other courts as provided for in our Constitution. *See Cox*, 520 S.W.3d at 37 (citing *Yoakum Cnty. v. Gaines Cnty.*, 163 S.W.2d 393, 396 (Tex. 1942)). As such, our review of the Commissioners decision here is limited to discerning whether the Commissioners acted illegally,

unreasonably, arbitrarily, or otherwise clearly abused their discretion. *Agan*, 940 S.W.2d at 79–80; *Stringer*, 843 S.W.2d at 479.

A district court may exercise general supervisory control over a commissioners' court in three circumstances. *Sullivan*, 499 S.W.3d at 553. First, if the commissioners' court fails to perform a clear statutory duty, a district court may order that it do so. *Id.*; *see Vondy v. Comm'rs Ct. of Uvalde Cnty.*, 620 S.W.2d 104, 108–09 (Tex. 1981) (*Vondy I*). Second, a district court has jurisdiction over claims in which it is alleged that the commissioners' court acted illegally or exceeded its authority, or when the challenged act is otherwise invalid. *Sullivan*, 499 S.W.3d at 553; *see Wichita Cnty. v. Bonnin*, 182 S.W.3d 415, 421–22 (Tex. App.—Fort Worth 2005, pet. denied). Third, when the commissioners' court performs an act that is entrusted to its discretion, "jurisdiction can be invoked by allegations that the commissioners court's decision is arbitrary, capricious, or unsupported by substantial evidence." *Sullivan*, 499 S.W.3d at 553 (citing *Vondy I*, 620 S.W.2d at 108–09).

Relying on *Wise County v. Mastropiero*, Hobson argues that the trial court had the jurisdiction to: (1) review the Commissioners decision to deny his application based on its failure to perform its statutory duty to maintain the Road; (2) determine the public status of the Road; and (3) order the Commissioners to comply with its statutory duty to maintain the Road for public use. *See* No. 02-18-00378-CV, 2019 WL 3755766, at *1–7 (Tex. App.—Fort Worth Aug. 8, 2019, no pet.) (mem. op.). However, *Mastropiero* is distinguishable based on the means that Hobson utilized to seek relief.

In *Mastropiero*, a housing developer presented its "Phase Two Final Plat" for a subdivision development to the county commissioners' court; the plat described several roads and stated that the roads were "dedicate[d] to the public." *Id.* at *1.

33

The county instructed an engineer to conduct an inspection of the roads, and the engineer later submitted a letter of compliance to the commissioners' court certifying that the developer had completed all "infrastructure improvements"—including the roads—according to county specifications. *Id.* The commissioners' court at a public meeting unanimously approved the final plat for Phase Two based on the "letter of compliance" issued by the engineer. *Id.* The final plat was then endorsed and filed in the county's records, and the county's procedures showed that filing the plat was the next step in the process after the county "accepts improvements." *Id.* Thereafter, the plaintiff, a resident of the Phase Two subdivision, filed suit against the county alleging that the county failed to repair and maintain the Phase Two roads because the county had accepted the roads as county roads and had a statutory duty to maintain them. *Id.* at *5–6; *see* TRANSP. § 251.003(a). Importantly, the plaintiff sought declaratory relief including declarations from the trial court that the roads should be maintained by the county. *Id.* at *1. The county filed a plea to jurisdiction, which the trial court denied. *Id.* at *5. On appeal, the Second Court of Appeals affirmed the trial court's order and held that a fact issue remained as to whether the county had accepted the dedication of the plats for public use. *Id.* at *5–7.

In the case before us, the Ezells contend that the trial court lacked jurisdiction to grant Hobson's requested relief because the Commissioners did not have the authority to order such relief. We agree. Because of the type of relief requested by Hobson in his pleadings, the proper method for which to adjudicate Hobson's claims against the Commissioners, and to obtain a determination of the Road's status, would

34

be through an action for declaratory judgment.[11]  Unlike the plaintiff in *Mastropiero*, Hobson did not seek or request any declaratory relief under the UDJA against the Commissioners; instead, the claims that he asserted against them were limited to whether the Commissioners abused their discretion by denying his application, including his request to declare the Road as a public road.  *See Mastropiero*, 2019 WL 3755766, at *1–7.  As we have said, a district court's supervisory control over the conduct of a commissioners' court is only invoked when the commissioners' court acts beyond its jurisdiction or clearly abuses its discretion.  *Agan*, 940 S.W.2d at 80.  In this instance, we cannot say that they did either.

We conclude that the Commissioners did not have the authority to declare the Road as a public road; therefore, the Commissioners could not have abused their discretion by their inaction or refusal to grant Hobson's application or his request to maintain the Road.   Moreover, because Hobson only sought declaratory relief for the claims that he asserted against the Ezells—and not the Commissioners—the trial court was limited to determining whether Hobson's pleadings were sufficient to invoke its supervisory jurisdiction over his abandonment claim.  They were not. Therefore, because the trial court lacked jurisdiction over Hobson's requested relief, and because the Commissioners did not have the authority to determine the rights of private landowners, the trial court did not err when it dismissed Hobson's claim that the Commissioners had abandoned and failed to maintain the Road as a public road. *See Agan*, 940 S.W.2d at 80; *Newton Cnty.*, 149 S.W.3d at 263–64.

---

[11]Additionally, a county or commissioners' court may elect to file suit to determine whether a private road has become a public road by prescriptive easement.  *See Newton Cnty.*, 149 S.W.3d at 264; *Chambers Cnty. v. Frost*, 356 S.W.2d 470, 485 (Tex. App.—Waco 1962, writ ref'd n.r.e.) (discussing an action by a county to establish a public easement over land which the county claimed were public roads); Tex. Att'y Gen. Op. No. JC-0503 (2002).

Nevertheless, even if the trial court determined that the Commissioners had abused their discretion in denying Hobson's application, the trial court lacked the jurisdiction to compel an act that rests within the Commissioners discretion—the denial of his application for a neighborhood road. *See Cox*, 520 S.W.3d at 37 ("In short, the district court may order the commissioners court to exercise its discretion, but [a district court] cannot tell the commissioners what decision to make.") (quoting *Stringer*, 843 S.W.2d at 479); *see generally Bastrop Cnty. v. Samples*, 286 S.W.3d 102, 106 (Tex. App.—Austin 2009, no pet.) (discussing the procedure for a commissioners' court to create a neighborhood road, including the condemnation of land through eminent domain).

Accordingly, we overrule Hobson's third issue. Furthermore, because the Ezells conclusively established the applicability of certain affirmative defenses raised by them, which we have specifically discussed in this opinion, we also conclude that the trial court did not err when it denied Hobson's cross-motion for summary judgment on the same claims. As such, we also overrule Hobson's first issue.

D. *Attorney's Fees*

In his fourth issue, Hobson argues that the trial court abused its discretion when it awarded attorney's fees to the Ezells under the UDJA.[12] *See* CIV. PRAC. & REM. § 37.009. As relevant to this appeal, after the trial court signed its amended summary judgment order, the Ezells and Hobson each submitted additional briefing to the trial court on the Ezells' request for attorney's fees and costs; attached to the Ezells' brief was an affidavit by their trial counsel and billing invoices for legal

---

[12]We note that Hobson does not challenge the trial court's award of contingent appellate attorney's fees.

services rendered. After considering the parties' submissions, the trial court signed an order awarding the Ezells $62,478.15 in attorney's fees.

The trial court also signed findings of fact and conclusions of law, which included in relevant part, the following regarding its attorney's fee award: (1) the attorneys' fees awarded to the Ezells were reasonable and necessary; (2) the evidence submitted by the Ezells satisfied the evidentiary factors outlined in *Rohrmoos*; (3) the total hours and rates included in the Ezells' billing statements were reasonable and necessary to defend against Hobson's UDJA claims; (4) the elements of Hobson's injunctive relief claim overlapped with Hobson's declaratory judgment claims; (5) the non-declaratory judgment claims were intertwined with Hobson's declaratory judgment claims, segregation was not workable, and a discount may be applied; and (6) a discount of thirty-three percent to the total attorneys' fees incurred by the Ezells was reasonable to account for the attorneys' fees necessary for the Ezells to defend against Hobson's declaratory judgment claims as opposed to the non-declaratory judgment claims.

In his challenge to the trial court's attorney's fee award, Hobson argues that the trial court abused its discretion because: (1) the evidence presented by the Ezells failed to show that the trial court's award was reasonable, necessary, or equitable; and (2) the Ezells failed to properly segregate their fees.[13] Conversely, the Ezells argue that the evidence submitted to the trial court in their sworn declaration constituted sufficient evidence of the fees requested under the *Rohrmoos* standard, they were not required to segregate their fees because Hobson's non-declaratory judgment claims were ultimately the same as his declaratory judgment claims

[13]In his brief, Hobson prays that if we reverse the trial court's judgment, we should also reverse and render the trial court's award of attorney's fees. In the alternative, Hobson prays that the issue of attorney's fees be reversed and rendered "to the proper amount of fees and expenses and supported by the evidence in the record."

against the Ezells, and the relief that Hobson sought was the same for all the claims he had asserted in the case—that the Road is a public road.

We note that Hobson does not raise a specific issue as to an insufficient entry in the billing statements or entries that could have been segregated from the services that were related to the unrecoverable fees that he incurred from his non-declaratory judgment claims. Instead, Hobson argues that the trial court did not properly consider the affidavit of his attorney, Paul J. Vitanza, in its findings of fact or its ultimate decision to award fees to the Ezells, and that the one-third fee reduction does not comport with the requirements and standards for segregation. Moreover, the parties do not dispute that the fees incurred for Hobson's non-declaratory judgment claims are not recoverable, or that the fees for those claims should have been segregated from the fees for the UDJA claims; rather, the segregation dispute raised by Hobson is whether the Ezells adequately segregated the attorney's fees in their request, and whether the trial court's award constituted an abuse of discretion by not requiring further segregation. *See Hannah Reef, Inc.*, 623 S.W.3d at 872 ("If any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees.") (citing *Chapa*, 212 S.W.3d at 313).

In his affidavit, Vitanza stated that "twenty-five (25) percent of the services underlying the $92,550.90 in attorney's fees [requested by the Ezells] . . . were reasonable and necessary based upon the allegations in the case." Vitanza also stated that the evidence presented by the Ezells was insufficient to show that segregation was not required because "[they] do not offer any explanation of the differences between the causes of action and requested relief . . . what fees are allocated to that defense, or why segregation is 'unworkable.'" Additionally, Vitanza concluded that

38

sixty-five percent of the Ezells' billing statements were solely related to nonrecoverable claims.

Based on this record, we cannot say that the trial court abused its discretion when it determined that the attorney's fees requested by the Ezells were reasonable and necessary. There is evidence of the specific services performed, who performed those services, and the reasonable hourly rate for each person who performed such services. *See Rohrmoos*, 578 S.W.3d at 498. As to the amount of the attorney's fees, the Ezells' brief, upon which the trial court relied when it rendered its attorney's fee award, was supported by the affidavit of the Ezells' trial attorney, Mary H. Barkley, along with attached, itemized billing statements. Moreover, even though Vitanza submitted a controverting affidavit to the trial court to rebut the reasonableness of the Ezells' requested fee award, a trial court does not abuse its discretion when it bases its decision to award attorney's fees on conflicting evidence. *Spector Gadon & Rosen, P.C. v. Sw. Sec., Inc.*, 372 S.W.3d 244, 252 (Tex. App.—Dallas 2012, no pet.); *see also Aquaduct, L.L.C.*, 116 S.W.3d at 444 (holding that we view the evidence in the light most favorable to the trial court's ruling).

In her affidavit, Barkley stated that: (1) she began providing legal services for the Ezells for this case in June 2022; (2) her rate was $415 per hour; (3) the hourly rate for comparable partner-level attorneys in the area ranges from $415 to $850 per hour; (4) the hourly rate for associate-level attorneys in the area ranges from $150 to $550 per hour; and (5) the attached billing invoices show the legal services that were rendered. Additionally, Barkley stated that the invoices also included billing statements for legal services rendered by other attorneys at her law firm who worked on this case, including her law partner, S.G. Johndroe, III, who's hourly rate was $430 per hour, and associates, who charged between $150 and $280 per hour.

Barkley further averred that the number of hours that she spent working on this case, as listed within her attached invoice for legal services rendered, were reasonable based on multiple factors such as the complexity of the issues involved and her experience as an attorney. Barkley stated that the total fees and costs incurred by the Ezells were $92,550.90, and the total expenses incurred were $1,166.32. The attached billing statements include itemized entries for legal services provided by Barkley, Johndroe, and associate attorneys at her firm. Each entry details the specific legal services performed, the attorney who performed the services, the hourly rate of the attorney who performed the services, and the total billable hours for each task, as required by *Rohrmoos*. *See* 578 S.W.3d at 498.

Barkley's affidavit also explained that the tasks related to the Ezells' defense against Hobson's declaratory judgment claims were "in many respects the same" when compared to his other, unrecoverable, non-declaratory judgment claims— permanent injunctive relief, abandonment, and his appeal of the Commissioners' decision to deny his application. Barkley stated that because segregation was not workable, she discounted her requested attorney's fees by one-third and only requested a fee award of $62,478.15. According to Barkley, this fee amount shows the reasonable and necessary costs to defend the declaratory judgment claims asserted by Hobson. *See Hannah Reef, Inc.*, 623 S.W.3d at 872.

Here, the attached billing statements and invoices for legal services rendered by Barkley and her law firm in this case were sufficient to inform the trial court of the time spent on specific tasks and enabled it to meaningfully review the fees requested by the Ezells. *See Long*, 442 S.W.3d at 255–56. The record also shows that, consistent with its findings of fact and conclusions of law, the trial court: (1) considered the lodestar method with regard to determining the amount of reasonable and necessary fees; (2) accepted the one-third discount proposed by

40

Barkley; and (3) found that "the award of $62,478.15 in attorneys' fees reflects the reasonable and necessary fees incurred by the Ezells in defending against [Hobson's] declaratory judgment claims under the UDJA." *See El Apple I*, 370 S.W.3d at 763–64 ("We generally accord considerable deference to a trial court's findings regarding whether prevailing counsel's claimed hours are excessive, redundant, or unreasonable."); *4922 Holdings, LLC v. Rivera*, 625 S.W.3d 316, 334 (Tex. App.—Houston [14th Dist.] 2021, pet. denied).

Additionally, because it was necessary for the Ezells to defend against Hobson's declaratory judgment claims regarding the public nature of the Road, they were required to also prove these same claims in their motion for partial summary judgment to defend against the other, unrecoverable claims asserted by Hobson. The trial court's findings state that it considered Hobson's concerns about awarding fees for unrecoverable claims, and that "segregation is not workable and a discount may be applied." In this regard, in circumstances where segregation is not workable, a "discount" may be applied to a party's request for attorney's fees to compensate for unrecoverable fees incurred which cannot otherwise be segregated from recoverable fees. *See Transcor Astra Grp.*, 650 S.W.3d at 482–83; *RSL Funding, LLC v. Metro. Life Ins. Co.*, No. 01-23-00190-CV, 2025 WL 920767, at *23 (Tex. App.—Houston [1st Dist.] Mar. 27, 2025, no pet.) (stating that a party establishing a percentage discount for unrecoverable fees must demonstrate that they "considered the actual work performed and the specific claims in the case"). Thus, Barkley's affidavit and the attached billing statements and invoices are sufficient evidence of properly segregated attorney's fees. *See Transcor Astra Grp.*, 650 S.W.3d at 482–83.

Because there is sufficient evidence to support the trial court's award of attorney's fees to the Ezells, we cannot say that its fee award was unnecessary, unreasonable, or that it constituted an abuse of discretion. *Long*, 442 S.W.3d at 255–

Further, based on the trial court's application of a discount in its fee award, we cannot say that the trial court abused its discretion by not requiring further segregation, or that its fee award was inequitable and unjust. *See Transcor Astra Grp.*, 650 S.W.3d at 482–83; *Bocquet*, 972 S.W.2d at 21; *see also Chapa*, 212 S.W.3d at 311–12. Accordingly, we overrule Appellant's fourth issue.

## IV. *This Court's Ruling*

For the reasons stated, we affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


September 18, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.